ALONZO C. MARSTON and another, petitioners for leave to enter appeal from decree of JUDGE OF PROBATE OF SOMERSET COUNTY, admitting to probate the will of ABNER COBURN.

Somerset.     Opinion February 2, 1887.

*Judge of Probate.     Jurisdiction.     Relationship.     R. S., c. 63, § 25.     Practice.*
*Witnesses to will.     Taxpayer a witness, when legacy to town.*

Under the statutes of this State, the authority of a judge of probate to take the probate of a will is not affected by the fact that his aunt by marriage is a legatee.

The provision of R. S., c. 63, § 25 is remedial in its character, but its remedy is not to be granted for the mere asking.

To entitle a collateral heir to the remedy provided in R. S., c. 63, § 25, it must appear that the petitioner made reasonable endeavors to seasonably claim an appeal and exercised reasonable diligence in prosecuting his petition; and even then his petition will not be sustained unless justice requires a revision of the decree of the judge of probate admitting the will to probate, especially when it appears that the real object sought is to try and compel a compromise.

Under the statutes of this State, the fact that a will contains a legacy or devise to a town in trust does not render a tax-paying inhabitant thereof an incompetent witness to the will.

The fact that a will gives a legacy to an incorporated Hall association "in part to secure a liberal policy in respect to the use of the hall for objects of public interest," does not render a stockholder of the association an incompetent witness to the will.

ON exceptions.

The opinion states the case and material facts.

*D. D. Stewart*, for petitioners.

The will must be attested by three " credible witnesses not beneficially interested under said will." R. S., 1871, c. 74, § 1.

Who are " credible " witnesses? Those " competent " by the rules of the common law. Interested witnesses are, by that law, incompetent. The statute expressly leaves the law regulating the execution of wills to be governed by the provisions of the common law. R. S., 1871, c. 82, § 84; *Sparhawk* v. *Sparhawk*, 10 Allen, 156; *Hawes* v. *Humphrey*, 9 Pick. 350; R. S., 1841, c. 115, § 75; R. S., 1857, c. 82, § 80; *Haven* v. *Hilliard*, 23 Pick. 10; *Warren* v. *Baxter*, 48 Maine, 193; *Smalley* v. *Smalley*, 70 Maine, 548.

The witnesses, who were citizens of Skowhegan, were directly benefited by the provisions of the will, and incompetent under both provisions of the statute. They were not " credible " witnesses within the meaning of the statute; and they were " beneficially interested under the will;" and therefore directly interested to support it. 3 Dane's Abr. 415; *Com.* v. *Ryan*, 5 Mass. 91; *Com.* v. *Worcester*, 3 Pick. 471; *Com.* v. *McLane*, 4 Gray, 427; *Clark* v. *Lamb*, 2 Allen, 396; *Hush* v. *Sherman*, 2 Allen, 597; *State* v. *Walpole*, 15 N. H. 27; *Gifford* v. *White*, 10 Cush. 494; *Northampton* v. *Smith*, 11 Met. 390; *Bacon Applt.* 7 Gray, 391; *Lufkin* v. *Haskell*, 3 Pick. 359; *Odiorne* v. *Wade*, 8 Pick. 517; *Pet. of Nashua*, 12 N. H. 429; *Sanborn* v. *Fellows*, 22 N. H. 473; *King* v. *Prosser*, 4 T. R. *17.

Every tax payer in Skowhegan is beneficially interested under this will. *Hawley* v. *Baldwin*, 19 Conn. 589; *Pierce* v. *Butler*, 16 Vermont, 104; *King* v. *Inhab. of Killerby*, 10 East, 292; *King* v. *Inhab. of Kirdford*, 2 East, 559.

In *Starr* v. *Starr*, 2 Root (Conn.) 306, it was held that the

inhabitants of a town or city to which a permanent fund for the benefit of its poor and needy citizens is given by a will, are not competent witnesses to such will. The fund tends to reduce their taxes.

"A witness beneficially interested under a will, is one gaining by or under its provisions." APPLETON, C. J., in *Smalley* v. *Smalley,* 70 Maine, 549. Nothing in *Piper* v. *Moulton,* 72 Maine, 155, contra. Mere dicta, not authority.

According to all the authorities a stockholder in a private corporation is not competent at common law as a witness to a will giving a legacy to such corporation. *Eustis* v. *Parker,* 1 N. H. 274; *Moses* v. *Julian,* 45 N. H. 55; *Watson* v. *Lisbon Bridge,* 14 Maine, 201; 1 Greenl. Ev. § 333, and authorities already cited.

The judge of probate had no jurisdiction to admit the will to probate. A legacy of $5000 was given to Mrs. Eleanor L. Turner, his aunt by marriage. The statutes forbid his acting as judge of probate in such case. R. S., 1883, c. 1, § 6. art. 22; R. S., 1883, c. 63, § 8.

In admitting a will to probate he acts judicially. He must hear evidence, and determine and decide whether the testator was of sound mind, and testamentary capacity. To allow him to decide such a question where his own aunt was a legatee of $5000 under the provisions of the will, would be simply a farce. Suppose the will was procured by her undue influence and that was the issue? Could he decide it? Her own nephew? Her title to it depends upon his decision. He takes it by his judicial determination and decision from the testator's heirs and gives it to his aunt. The law is open to no such reproach. *Conant* v. *Norris,* 58 Maine, 453; *McKeen* v. *Gammon,* 33 Maine, 187; *Call* v. *Pike,* 66 Maine, 350; *Lyon* v. *Hamor,* 73 Maine, 56; *Russell* v. *Belcher,* 76 Maine, 503; *Gay* v. *Minot,* 3 Cush. 352; *Sanborn* v. *Fellows,* 22 N. H. 473, 490; *Moses* v. *Julian,* 45 N. H. 56; *Northampton* v. *Smith,* 11 Met. 390.

All acts of the judge of probate who has no jurisdiction are absolutely void. *Holyoke* v. *Haskins,* 5 Pick. 20; S. C. 9 Pick. 259; *Gay* v. *Minot,* 3 Cush. 352; *Bedell* v. *Bailey,* 58

N. H. 62 ; *Sigourney* v. *Sibley*, 21 Pick. 101 ; *Moses* v. *Julian*, 45 N. H. 56 ; *Record* v. *Howard*, 58 Maine, 225 ; *Jochumsen* v. *Bank*, 3 Allen, 87 ; *Stearns* v. *Wright*, 51 N. H. 600.

All objections to his jurisdiction, except that growing out of the residence of the deceased which has been changed by statute, are open. *Record* v. *Howard*, 58 Maine, 225 ; *McFeely* v. *Scott*, 128 Mass. 17 ; *Jochumsen* v. *Bank*, 3 Allen, 87.

Administration granted by a judge of probate on an estate over which he has no jurisdiction is void, although no exception or appeal was taken. *Sigourney* v. *Sibley*, 21 Pick. 101 ; *Peters* v. *Peters*, 8 Cush. 543.

And although the whole proceedings are void, and may be treated as a nullity, still the better and equally proper remedy is by appeal, and the effect of the appeal will be to vacate the prior decrees and proceedings not appealed from. *Sturges* v. *Peck*, 12 Conn. 141. *English* v. *Smith*, 13 Conn. 223. It was the duty of the probate court itself to treat its own acts as void. *Sturges* v. *Peck*, 12 Conn. 141 ; *English* v. *Smith*, 13 Conn. 225.

If the judge of probate is a creditor of an estate, he has no jurisdiction at common law, and none by statute, if his debt exceeds $100.00. R. S., 1883, c. 63, § 8 ; *Cottle, Applt.* 5 Pick. 483 ; *Coffin* v. *Cottle*, 9 Pick. 287.

If he is a debtor to the estate, he has no jurisdiction, and his appointment of an executor under a will is utterly void ; and no consent, ratification or waiver, or confirmation on the part of those interested in the estate, can make such appointment valid. Opinion of court by SHAW, C. J. in *Gay* v. *Minot*, 3 Cush. 352 ; *Sigourney* v. *Sibley*, 21 Pick. 106.

If he is " otherwise interested," as by relationship within the prohibited degrees to any legatee in the will, upon the validity of which he must necessarily pass, as between the heirs and legatees, he has no jurisdiction, and his acts are void. The will has never been legally admitted by probate, and all the subsequent proceedings are void. R. S., 1883, c. 1, § 6, cl. xxii ; authorities and statutes before cited, R. S., 1883, c. 63, § 8 ; *Holyoke* v. *Haskins*, 5 Pick. 20 ; *Gay* v. *Minot*, 3 Cush. 354.

In the present case the judge of probate being disqualified to act judicially as between the heirs of Gov. Coburn and his own aunt, should have declined to admit the will to probate and the executors should have appealed.   No legal objection to the probate of the will in the appellate court upon the ground of relationship would then have existed.   *Patten* v. *Tallman*, 27 Maine, 28 ; *Moses* v. *Julian*, 45 N. H. 52.

If this course could not have been legally adopted, then the executors should have presented the will for probate in an adjoining county.   R. S., c. 63, § 8 ; *Sigourney* v. *Sibley*, 21 Pick. 106, and note on p. 108.

If the judge of probate had been a citizen of Showhegan, to which the large legacies in items 15 and 16 of the will were given, he would have been disqualified to admit the will to probate.   *Northampron* v. *Smith*, 11 Met. 390 ; *Bacon, Applt.* 7 Gray, 392.

Same rule disqualifies a witness to the will.   In *Stile's Appeal from Probate*, 41 Conn. 380, the court say : " Courts of probate are tribunals of limited jurisdiction and powers.   Their authority is strictly statutory, and the mode by which all issues involving the validity of their decrees are to be heard and determined, is provided by the legislature.   These courts have existed as a material part of our judicial system from a period anterior to the earliest reports of adjudged cases in this State, and a large part of the most important litigation in our higher courts originate with them."

Proof of their acts and doings is to be derived from their records.   And while they are courts of records, they are still courts of limited jurisdiction.   *Donovun's Appeal from Probate*, 41 Conn. 551 ; *Brown* v. *Estate of Sumner*, 31 Vermont, 673. " Courts of probate shall be deemed for all purposes a court of record," is the provision of the statute of New Hampshire.   R. S., N. H. c. 152, § 19.   Yet they are courts of but limited jurisdiction. *Tebbetts* v. *Tilton*, 24 N. H. 120 ; *Morgan* v. *Dodge*, 44 N. H. 257 ; *Wood* v. *Stone*, 39 N. H. 572.

" It is an inferior tribunal, and if it proceeds in a manner not authorized by law, the proceeding is void."   *Smith* v. *Rice*, 11 Mass. 507 ; *Peters* v. *Peters*, 8 Cush. 543.

In delivering the opinion of this court in *Fowle* v. *Coe*, 63 Maine, 248, Mr. Justice VIRGIN said: "Although courts of probate are declared by R. S., c. 63, § 1 to be ' courts of record ' having an official seal and ' power to issue any process necessary for the discharge of their official duties,' still their proceedings are not according to the course of common law, but they are creatures of the statute, having a special and limited jurisdiction only."

Whenever a review would be granted in a suit at common law or a default taken off, leave to enter an appeal from the probate court has been uniformly granted. It has never been considered necessary or usual to inquire into the merits further than to see that the party has fair ground for legal controversy. *Parker's Appeal*, 15 N. H. 24; *Wilcomb's Petition*, 26 N. H. 370; *Mathews' Pet*, 35 N. H. 289; *Moulton's Pet.* 50 N. H. 537; *Woodworth* v. *Wilson*, 50 N. H. 220; *Grout* v. *Cole*, 57 N. H. 547; *Wadleigh* v. *Eaton*, 59 N. H. 574; *Brewer* v. *Holmes*, 1 Met. 288; *Cross* v. *Cross*, 7 Met. 211; *Hutchinson* v. *Gurley*, 8 Allen, 23; *Wright* v. *Wright*, 13 Allen, 207; *Keene* v. *White*, 136 Mass. 23; *Boston* v. *Robbins*, 116 Mass. 314.

Mr. Bispham, in his principles of equity, says: "A mistake exists when a person under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted to do. It may arise either from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence." Bispham's Eq. § 185. See also Story's Eq. Juris.. 121, § 110.

That exceptions lie as matter of right to all rulings admitting or rejecting evidence will probably not be denied. It is perfectly well settled. *James* v. *Townsend*, 104 Mass. 367-8; *Boston* v. *Robbins*, 116 Mass. 313.

And it seems to be equally well settled that where this court has all the evidence before it that the judge had below, and can see plainly that he erred in his conclusions, made a mistake of some sort, and reached a result, from some mistake or misapprehension, or for any other reason decided the case wrongly, it is within the power of the court and becomes their duty, to revise

and correct the result below. *McKenney* v. *Alvord*, 73 Maine, 224 ; *Jackson* v. *Gould*, 72 Maine, 335 ; *Fayette* v. *Chesterville*, 77 Maine, 33 ; *Fessenden, Applt.* 77 Maine, 98 ; *Boston* v. *Robbins*, 116 Mass. 314. Late case in this State, 4 Eastern Rep. 939.

In *Piper* v. *Moulton*, 72 Maine, 155, the legacy was not for the support of such schools, as the town in its corporate capacity was obliged to support and maintain, but for a special school enacted by the will, and which imposed upon the town the burden of erecting a building for it. Of course the town took no corporate beneficial interest under it, and the inhabitants had none. Exactly like *Loring* v *Park*, 7 Gray, 42.

*Nettleton* v. *Nettleton*, 17 Conn. 543, cited by the other side, turned upon the peculiar statute provisions of Conn. at that time. See contra, *Stoddard* v. *Moulthrop*, 9 Conn. 503 ; *English* v. *Smith*, 13 Conn. 227 ; *Hawley* v. *Baldwin*, 19 Conn. 589 ; *Stiles' Appeal*, 41 Conn. 329.

Whether the petitioners had or had not an intention to appeal is of no consequence. *Canfield* v. *Wooster*, 26 Conn. 388.

On an appeal by an heir, held that the fact that all the other heirs assented, was immaterial. *Watrous* v. *Chalker*, 7 Conn. 226.

*Edmund F. Webb* and *Appleton Webb* (with whom was *Wm. L. Putnam*) for the executors.

Justice and equity do not require that the petition be granted, it will therefore not be granted. *Ahearn* v. *Mann*, 1 East, Rep. 551 ; *Waltham Bank* v. *Wright*, 8 Allen, 122 ; *Jenny* v. *Wilcox*, 9 Allen, 246 ; *Richards* v. *Child*, 98 Mass. 285 ; *Sykes* v. *Meacham*, 103 Mass. 286 ; Pomeroy Eq. Jur. § 1364, note 1, § 836 ; *Brown* v. *Buena Vista*, 95 U. S. 159 ; *Wells* v. *Child*, 12 Allen, 334 ; Story Eq. Jur. § 887 ; *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 201 ; *Truly* v. *Wanzer*, 5 Howard, 141 ; *Bradley* v. *Richardson*, 2 Blatchf. 347 ; *Nason* v. *Smalley*, 8 Vt. 118 ; *Creath's Admr.* 5 Howard, 204 ; *Jones* v. *Eaton*, 51 Maine, 387 ; *Brooks* v. *B. & M. L. R. R.* 72 Maine, 365 ; *Todd* v. *Chipman*, 62 Maine, 189.

The petitioner is estopped from contesting the will: *Holt* v. *Rice*, 54 N. H. 398 (20 Am. Rep. 138) ; *Watson* v. *Watson*, 128 Mass. 152 ; *Caulfield* v. *Sullivan*, 85 N. Y. 153.

Witnesses to the will were competent. Laws 1821, c. 38, § 2 ; R. S., 1840, c. 92, § 52 ; R. S., 1857, c. 74, § 1 ; Stat. 1859, c. 120 ; R. S., 1871, c. 74, § 1 ; *Jones* v. *Larrabee*, 47 Maine, 476 ; *Smalley* v. *Smalley*, 70 Maine, 548 ; *Warren* v. *Baxter*, 48 Maine, 195 ; *Patten* v. *Tallman*, 27 Maine, 28 ; *Fletcher* v. *S. R. R. Co.* 74 Maine, 436 ; *Hawes* v. *Humphrey*, 9 Pick. 350 ; *Loring* v. *Park*, 7 Gray, 42 ; Greenl. Ev. §§ 409, 331 ; *Northampton* v. *Smith*, 11 Met. 390 ; *Hinson* v. *Kersey*, 4 Burns' Ec. Law, 88 ; *Jones* v. *Habersham*, 63 Geo. 146 ; *Smith* v. *Belknap*, 1 John. 487 ; *Bloodgood* v. *Jamaica*, 12 John. 285 ; *Piper* v. *Moulton*, 72 Maine, 155 ; *Eustis* v. *Parker*, 1 N. H. 273 ; *State* v. *Stuart*, 23 Maine, 111 ; *State* v. *Woodward*, 34 Maine, 249 ; *Fletcher* v. *R. R. Co.* 74 Maine 436 ; *King* v. *Prosser*, 4 T. R. *20 ; *King* v. *Kirdford*, 2 East, 560 ; *Nash* v. *Reed*, 46 Maine, 168 ; *Jones* v. *Tebbetts*, 57 Maine, 572 ; *Patterson* v. *Eames*, 54 Maine, 203 ; *State* v. *Intox. Liquors*, 54 Maine, 564 ; *Nason* v. *Thatcher*, 7 Mass. 398.

The bequest to the Hall association was a charity. The following cases bear on the question : *Saltonstall* v. *Sanders*, 11 Allen, 455 ; *Everett* v. *Carr*, 59 Maine, 333 ; *Olliffe* v. *Wells*, 130 Mass. 221 ; *Ayde* v. *Smith*, 44 Conn. 60 ; *Veazey* v. *Jameson*, 1 Simons & Stewart, 69 ; *Ellis* v. *Selby*, 1 Mylne & Craig, 286 ; *Williams* v. *Kershaw*, 5 Clark & Fin. 111 ; *James* v. *Allen*, 3 Merrivale, 15 ; *Prichard* v. *Thompson*, 95 N. Y. 76 ; *Power* v. *Cassidy*, 79 N. Y. 602 ; *Grimes* v. *Harmon*, 35 Ind. 198 (9 Am. Rep. 690) ; *Clement* v. *Hyde*, 50 Vt. 716 (28 Am. Rep. 522) ; *Simpson* v. *Welcome*, 72 Maine, 496 ; *Dole* v. *Lincoln*, 31 Maine, 422.

Stockholders in the Hall association competent as witnesses to the will : *Windham* v. *Chetwynd*, 1 Burrows, 414 ; Jarman, Wills, 71 ; *Hatfield* v. *Thorp*, 5 B. and Ald. 589 ; 3 Jarman, Wills (Randolph & Talcott's ed.) 777-8 ; *Sullivan* v. *Sullivan*, 106 Mass. 474 ; *Regina* v. *Arnand*, 9 Ad. and El. 806 ; *Van Allen* v. *Assessors*, 3 Wall. 584 ; *Hagar* v. *Bank*, 63 Maine,

512; Morawetz' Corp. § 351; Wood's Field's Corp. § 92; *Rand* v. *Hubbell*, 115 Mass. 474; *Gifford* v. *Thompson*, 115 Mass. 478; *Minot* v. *Pain*, 99 Mass. 106; *Foote, Applt.* 22 Pick. 304; *In re Dodge & Stephenson Manuf. Co.* 77 N. Y. 101.

Judge of probate had jurisdiction: *Russell* v. *Belcher*, 76 Maine, 501; *Winchester* v. *Hinsdale*, 12 Conn. 93; 5 Black. Com. 361; *Hall* v. *Thayer*, 105 Mass. 219; *Aldrich, Appt.* 110 Mass. 189; *Cottle, Appt.* 5 Pick. 483; *Stearns* v. *Wright*, 51 N. H. 600; *Northampton* v. *Smith*, 11 Met. 395; *Cutts* v. *Haskins*, 9 Mass. 543; *Holyoke* v. *Haskins*, 5 Pick. 25; *Harvard College* v. *Gore*, 5 Pick. 370; *Nettleton* v. *Nettleton*, 17 Conn. 542; *Ryans*, 72 N. Y. 1; *Com.* v. *Emery*, 11 Cush. 406.

VIRGIN, J.  The petitioners seek under R. S., c. 63, § 25, for leave to enter an appeal from the decree of the judge of probate for this county, whereby an instrument, purporting to be the last will of the late Abner Coburn, was admitted to probate.

The petitioners contend that the judge did not have jurisdiction of the probate of this instrument because of a legacy of $5,000 therein to Eleanor S. Turner, who is the judge's aunt by reason of her marriage, prior to the execution of the instrument, with a brother of the judge's mother; and the provision of R. S., c. 1, § 6, clause 22 is invoked to sustain the point.

We are of opinion that that provision, first enacted in the revision of 1841 for another and entirely different purpose, to wit: fixing the extreme limit of the disqualification by relationship of those to whom it was intended to apply; can have no possible application to judges of probate; for they were never required by statute to be disinterested by relationship in the estates of deceased persons.  On the contrary, whatever may have been the rule at common law, the legislature of this state, when probate courts were first established here, perceiving the great difficulties and confusion which would otherwise necessarily attend the probating of wills and granting administration on the

estates of citizens deceased within the several counties, took in hand the whole subject matter of probate courts, their jurisdiction and the jurisdiction of the judges, and enacted a full, complete and independent code intended to reach every case that could arise; and subsequently made such alterations and additions as experience suggested, to meet new or omitted cases. Hence this court has repeatedly said : " Courts of probate are creatures of the statute, having a special and limited jurisdiction only. *Fairfield* v. *Gullifer*, 49 Maine, 360. We must look to the statute for the jurisdiction of such courts in a given case." *Fowle* v. *Coe*, 63 Maine, 248. And now we may add, what we had no occasion to decide then, to wit : to ascertain whether the judge of probate for a given county has jurisdiction for taking the probate of the will of a deceased inhabitant or resident thereof, we must look to the provisions of R. S., c. 63, which contain all of the present law on the subject. And this view is made morally certain by an examination of the legislation on this subject.

Probate courts were first established by statute in 1784. Mass. St. 1784, c. 46. *Wales* v. *Willard*, 2 Mass. 124. The subject was more thoroughly examined by the general court in 1817 and resulted in an act of forty-five sections. Section one established a probate court in each county and provided for the appointment of " some able and learned person as judge therein for taking the probate of wills and granting administration on the estates of persons deceased, being inhabitants of, or residents in, the same county, at the time of their decease." St. 1817, c. 190, § 1. Section 5 provided : " Whenever any judge of probate shall be interested in the estate of any person deceased within the county of such judge, " the estate shall be settled in another county." And the Supreme court decided that when the judge of probate for the county where a person deceased had jurisdiction of his estate, the acts of any other judge of probate on such estate are void. *Cutts* v. *Huskins*, 9 Mass. 544 ; *Holyoke* v. *Huskins*, 5 Pick. 25.

In 1821, in establishing and defining the jurisdiction of probate courts and of the judges thereof in this state, the legislature

passed an act comprising seventy-five sections, adopting literally
most of the provisions of the Mass. St. 1817, c. 190, and includ-
ing the subject of guardians.  But instead of re-enacting a.
transcript of § 5 of St. 1817, with its simple general provision
(" whenever any judge of probate shall be interested in the estate
of any person deceased within the county of such judge," the
estate be settled in another county;) our legislature defined.
specifically the disqualifying interest to be that of an " heir,.
legatee, creditor or debtor, or within the degree of kindred,
which by the laws of the State, he might by any possibility be
heir in the estate of any person deceased within the county of
such judge." St. 1821, c. 51, § 2.  And this comprehensive
and clearly defined interest constitued the only exception which
precluded or excused a judge of probate from taking the probate
of the will of any deceased inhabitant of his county.

To exclude all cavil, the legislature at its next session amended!
the St. of 1821 by an act of a single section expressed in the
positive, unqualified, peremptory language following: "The
estates of all persons deceased shall be settled in the probate
court of the county where the deceased was last an inhabitant,.
unless the interest of the judge of probate in such estates, as
heir, legatee, creditor or debtor, shall exceed the sum of $100,.
any law to the contrary notwithstanding." St. 1822, c. 198.
The object of this statute would seem.to be both declaratory and!
amendatory ; to construe the previous statute as to the general!
jurisdiction and to fix the minimum limit of personal pecuniary
interest which should disqualify a judge of probate.  And these
provisions of the Stats. 1821 and 1822 remained unchanged and.
were in substance put in two sections by the revision commis-
sioners and re-enacted in R. S., 1841, c. 105, § § 3 and 18, the
latter containing the provisions as to the disqualifying interest.

In 1841, while the first revision of the statutes was being
made, a statute was enacted for transferring to another county
the uncompleted settlement of an estate whereof the executor,
administrator or guardian had received the appointment of
judge of probate, St. 1841, c. 149, § 1.  This provision
suggested an additional disqualifying interest not previously

covered.  A few days thereafter, and to condense and make §
18 of the revision consistent, the same legislature, by the general
"" Act of Amendment " appended to the revision, provided :
"" Chapter 105, § 18 shall be amended by striking out the words
" as heir, legatee, creditor or debtor or,' and inserting instead
thereof, ' either in his own right or in trust, or in any other
manner, or be,' so that the section, as amended, shall be as
follows : " Whenever any judge of probate shall be interested
either in his own right, or in trust, or in any other manner, or
be within the degree of kindred, by means of which by law he
might, by any possibility, be heir to any part of the estate of
any person deceased," such estate shall be settled in another
county ; ' provided, that the amount of the interest of such
judge shall not be less than $100 in such estate.' "  R. S., 1841,
c. 105, § 18, as amended by "Act of Amend." of April 14,
1841, § 15.

By the foregoing amendment the substituted words : " in his
own right," obviously included the direct personal interest
previously described as that of " an heir, legatee, creditor or
debtor," while " in trust " were evidently intended to cover any
indirect, representative interest which the judge might have
strictly as trustee, or as executor, administrator or guardian ;
and to make sure of comprising every pecuniary relation of a
judge to an estate within his county, the legislature added in the
same connection, nosci a sociis, " or in any other manner."  The
" kindred " clause which immediately follows and the fixed money
limit of interest make certain this construction.  This part of
§ 18, save the redundant words, has been re-enacted in the
several successive revisions and appears in the plain language
now found in R. S., c. 63, § 8.

Moreover, that the legislatures of 1874 and 1883 believed
that the phrase, " in any other manner " had no reference to any
interest by " relationship within the sixth degree " appears
morally certain from the following considerations :  When probate
courts were established and their jurisdiction and that of the
judges were defined in St. 1821, c. 51, their power to appoint
guardians in their county was comprised in the same section with

that of probating wills and granting administration on estates of deceased persons, § 1; and the disqualifying interest mentioned in § 2 was alike applicable to judges whether acting in relation to estates or to guardians. But in the first revision of the statutes (1841), the provisions relating to guardians were separated from those concerning the estates of deceased persons, and put into different chapters; the latter in c. 105, and the former in c. 110. And while c. 110, § 1 conferred power on a judge of probate to appoint guardians to minors residing in his county, that chapter contained no exception by way of a disqualifying interest. Hence the legislature, in 1874, amended the unqualified language of c. 110, § 1, by adding: "But when any judge is interested either in his own right, in trust, or in any other manner, *or within the sixth degree of kindred*, such appointment shall be made in an adjoining county. St. 1874, c. 156. Both of these chapters (R. S., c. 63, § 8 and c. 67, § 1) were revised by the same learned commissioner and legislative revision committee of 1883 and literally re-enacted by the legislature of that year; and if the same construction was intended for the disqualifying interest in both sections, they would hardly be expected to express it in such widely different language.

If it be objected that the judge would not be the proper person to try the question, had such been raised, whether or not his aunt, by undue influence, procured the will to be made, the answer is we are construing the statute, and if that constitutes him the tribunal to pass upon that question, he must do so, as there would be no other (*Com.* v. *Ryan*, 2 Mass. 89, 91); and his decision, if not satisfactory, could be tested on appeal by the aggrieved party.

There being no pretension or suggestion that the "kindred" clause in c. 63, § 8, can have any possible application to this case, our conclusion is, that the judge of probate who admitted the will to probate had jurisdiction. If he had, then as before seen no other judge could have except under the conditions mentioned in c. 63, § 5; none of which existed here.

We are aware that the practice in Massachusetts and New

Hampshire, under their peculiar constitutional and statutory provisions, is different. They class probate courts with all inferior tribunals. *Hall* v. *Thayer*, 105 Mass. 219, and cases there cited. *Aldrich, Apllnt.* 110 Mass. 189 ; *Moses* v. *Julian*, 45 N. H. 52 ; *Stearns* v. *Wright*, 51 N. H. 600 ; *Perkins* v. *George*, 45 N. H. 453. And in the latter state, when the judge is interested otherwise than is provided by their statutes, and therefore has no jurisdiction, the practice is for him to decline to act and take the case up by appeal. *Perkins* v. *George, supra.* Such practice has never obtained in this state. *Hatch* v. *Allen*, 27 Maine, 85.

As the judge of probate had jurisdiction in this case, his decree is conclusive, in the absence of any appeal therefrom, even if the witnesses were beneficially interested. *Piper* v. *Moulton*, 72 Maine, 155, 158, and cases cited there.

But while no appeal was taken within twenty days from the date of the decree, as required by R. S., c. 63, § 23, without any discrimination in favor of non-residents, the petitioners asked the supreme court of probate sitting in the county of Somerset to allow them to enter an appeal for the reasons set out in their petition, which, if granted, would "have the same effect as if it had been seasonably done." R. S., c. 63, § 25.

To authorize the granting of their prayer, the petitioners were bound to satisfy the court that they "omitted to claim an appeal" within the twenty days next succeeding the date of the decree, "from accident, mistake, defect of notice, or otherwise without fault on their part;" and thereupon, "the supreme court, if justice requires a revision, may upon reasonable terms, allow an appeal to be entered." R. S., c. 63, § 25.

The presiding justice denied their prayer and directed their petition to be dismissed. He must, therefore, not only have determined, as we have—that the judge of probate had jurisdiction, but also, that the petitioners, at least, had failed to sustain the burden of satisfying him that "justice required a revision."

The petitioners' allegations under R. S., c. 63, § 25 are, that they had no notice or knowledge whatever of the existence of any such will, until Jan. 26, 1885, or that it had been or would

be offered for probate on Feb. 3, until Feb. 26, when the time for appeal had expired; that they should "surely and certainly have appealed within the twenty days, had they known it;" that their omission to seasonably appeal "was wholly without fault on their part;" that they were deprived of notice "by the accidents growing out of the situation and their great distance from the probate court; and that "justice requires a revision of the decree."

A careful and patient consideration of the voluminous evidence filed, has failed to satisfy us of the truth of any of these allegations which are material to the matter before us.

The petitioners are a nephew and niece of the testator resident in San Francisco, having a father in Waterville, a sister and brothers in Skowhegan, one of which brothers was the duly constituted agent of the nephew. The petitioners were in "frequent consultation," the nephew doing all the writing for both." The statute requires no personal notice, and the general notice by publication was given. The testator died January 3, 1885, of which the petitioners were apprised by telegram received January 4th. The will was read, by the executor who wrote it, to the resident heirs, and twice to the nephew's agent, in the evening after the funeral on January 7th. One of the California heirs—a brother of the petitioners—was a subscriber to the Skowhegan newspaper which contained a copy of the will in its issue of January 14th. Both of the petitioners must have known there was a will of some kind. The nephew visited his friends in Skowhegan about a year after the will was executed, where he tarried some months, and then declared to one of the executors—what was a matter of great notoriety—that "he supposed his uncle had made a will and that it was understood the property generally went out of the family;" and he substantially admitted, by declining to deny when pressed, that he read in the California daily newspapers, within a week of the testator's death, dispatches announcing that the testator had bequeathed the bulk of his property to the cause of education. Moreover, prior to February 28th, his agent wrote to him, and his co-petitioner "every few days, oftener than once a week," and

his sister in Skowhegan had "written to all about everything, twice to his (agent's) certain knowledge."

That any number of these non-produced letters miscarried, is utterly inconsistent with common experience under our efficient postal service, and with unsatisfactorily explained expressions in their letters, such as that of March 5th, where it drops out that they knew as early as February 5th, that executors had been qualified. And that several of these letters have been purposely withheld, among them that which accompanied the copy of the will, is evident from the petitioners' utterly irreconcilable testimony relating to the search for them, together with their very distinct recollection of the dates of some letters received and their obliviousness as to the dates of others and of their contents.

If they did not actually know the precise terms of the will until January 26, they must have known its substance — that they were not to share the whole property. That a large part of it was going to charitable objects had become so notorious when the nephew was in Skowhegan, a year after the will was made, as to call from him the remark already mentioned. Having as much at stake as they did, and considering the ill effect of delaying the settlement of the estate, ordinary care and diligence, which the law requires, demanded that they should be active and make use of all such reasonable means as were within their reach to obtain the information, if they had not already done it, necessary to enable them to prosecute their right of appeal. They knew in February that their present counsel was in California, and had had some communication from him, for on March 3d, "he (nephew) had been waiting a few days to see him."

But it is obvious that they had no intention of appealing at any time after January 26 and before February 23, hence their non-residence placed them in no better situation than they would have had if residents. We are not satisfied, therefore, that their omission was not without fault on their part; but, on the contrary, that gross laches and culpable negligence were the cause of their non-action.

Thus where an analogous remedial statute, (R. S., c. 77, § 19,) authorized the Supreme Court, on a bill in equity, to give a creditor judgment for his claim which he did not seasonably present to the administrator on his debtor's estate, provided, *inter alia*, the " creditor is not chargeable with culpable negligence," it was held in Massachusetts, under a like statute, that a bill alleging that the complainant resided in Montreal and did not know of the debtor's decease, or of the appointment of the administrator until the special limitation bar had intervened, could not be maintained. The court said : " The only ground on which he can rest his claim is, that he resided in the remote city of Montreal, and had not been informed of the debtor's decease. The facts can hardly be said to present anything more than a case of mere neglect and inattention. He failed to make an effective inquiry, and in that way remained in ignorance of a fact which was, of course, perfectly well known, and which there was no attempt to conceal. The formal notice required by law and directed by the probate court, was given. The only mistake is the failure to know a fact about which he made no inquiry." *Sykes* v. *Meacham*, 103 Mass. 286.

Again, the petitioners were guilty of negligence in prosecuting their petition. It is of the utmost importance that an estate of this magnitude, comprising more than one million four hundred thousand dollars of " rights and credits," should, as speedily as the law will allow, come into the possession of the rightful administrators for proper distribution. The petitioners not only had no intention of seasonably appealing, but even the nephew did not conclude to prosecute the petition until shortly before its date in September, and the niece, as late as August 24, wrote : " Lon (nephew) is very anxious I should sign all papers with him, and come in to help pay the expenses I suppose, if he fails to get a compromise." But it seems she succumbed, for on October 26, she wrote : " No wonder you were astonished to see my name, but I could not get out of it. He (nephew) annoyed me so much that I finally decided to go in with him for better or worse. If I make nothing out of it, he says he will pay all the expenses."

While the law affords to parties a year as its extreme limit of indulgence, still a reasonable construction demands diligence on their part, and does not allow them to spend the whole time, when they know all the necessary facts, in coming to a conclusion whether or not they will attempt to avail themselves of its remedial provisions.

No good reason is assigned for not having the petition drawn, obtaining an order of notice thereon in vacation, (R. S., c. 81, § 1) and entering and trying it at the March term, and thus save a year in taking it to the law court, instead of entering it on the nineteenth day of September term simply for notice, and trying it at the December term. For the clause in R. S., c. 63, § 25, providing that the "petition shall be heard at the next term after the filing thereof," is simply directory, limiting the time of delaying the hearing. But the real reasons are obvious. The niece had not then yielded to the "annoyances" of the nephew. Compromise was early the height of his expectation, and later of hers. Delay, as an obstruction to a desirable early settlement of the estate, was deemed to be the most convincing argument for a compromise. An attorney was being sought, who, in direct violation of R. S., c. 122, § 12, would enter into the scheme and trust to success for his fees. Thus as early as March 3, the nephew wrote to his agent in Skowhegan: "It would seem to me that a good lawyer would take such a case as this and stand in for a share if he won the case;" adding, "All these big cases here (California), such as Lick, compromised, and this is probably what the lawyers would do in this." And on March 5, he wrote that a lawyer, formerly from Maine, "thinks there can be no doubt but a movement in that direction would bring them to a compromise at once." So, also, on August 24, the niece wrote: "What do you think of ——'s idea of forcing a compromise?" adding what we quoted above from her same letter in regard to the nephew's desire to have her sign "all the papers and help pay the expenses, if he fails to get a compromise." And although they did not succeed in finding a lawyer "who would take such a case as this and stand in for a share if he won," their fruitless search did not finally deter them from pursuing their main purpose.

Nor do we think that "justice requires a revision." For there can be no well grounded pretension that this instrument is other than the result of the deliberate, thoroughly matured and well settled purpose of the eminent man whose signature it bears, completing the line of donations begun years before his decease, showing full conversance with the magnitude of his own and of his brother's estates, (the latter of which, under a power of attorney from its heirs, including the petitioners, he also managed during the last nine years of his life) and a full appreciation and knowledge of the condition and circumstances of his heirs. To be sure, the petitioners offered certain testimony tending to show that certain of his brothers "broke down mentally," and also his business affairs, with his manner of conducting them, so far as his books might disclose them — all as bearing upon his testamentary capacity — which the presiding justice, in the exercise of his undoubted discretionary power to direct the course of the trial before him, temporarily declined to hear, apprising their counsel at the same time that he did not rule it to be incompetent, but would postpone it until some evidence of a more direct and substantial character should be introduced. But as no such testimony was introduced and the offer was not renewed, we conclude that that issue was abandoned, especially as the trial was taking place in the town where the testator had lived so many years, and where the nephew had stopped six months in 1883 and 1884, thus having not only personal knowledge of the testator's mental condition, but ample opportunities for sounding his townsmen on the subject. Hence, if a revision is to be granted under this head, it must be based upon some provision in the will which is unjust to the petitioners. But it is our opinion that none of its provisions are unjust to them.

The claim made in their petition is that if the will is allowed to stand, it "practically and to a great extent disinherits his heirs." That is to say, her uncle gave one-half of his estate to charitable objects, in which he notoriously took a great interest during many of his latter years, and to her only her equal share of the remainder, save a few comparatively small bequests to some

intimate friends. This disposition of his estate the law fully authorized, since the whole was his own; and they being collateral, and not lineal heirs, he was under no legal obligation to support them. (R. S., c. 24, § 16.) And knowing that she would receive her equal share of all his brother's estate, of the same magnitude as his own, we fail to perceive wherein any injustice is done to her by the will. The nephew's share of the testator's residue, is bequeathed, to be sure, to him in trust for his son; but he inherits in his own right, his equal share of all of Philander's; and it is quite apparent from the testimony why the testator made this discrimination, which may in the end show wisdom rather than any want of testamentary capacity, or any injustice to the nephew and his family. Neither new trials in equity nor reviews in law, when not a matter of right, are granted, except upon the merits to prevent injustice. Pom. Eq. § 836; *Brooks* v. *B. & M. L. R. R. Co.* 72 Maine, 365; *Jones* v. *Eaton*, 51 Maine, 387, and cases there cited.

This provision of the statute (R. S., c. 63, § 25) has never before been before the law court, though like provisions have more or less frequently been construed in other jurisdictions and applied to a variety of circumstances, the courts declaring the provisions to be remedial in their character, in which view we fully concur. The language of the statute precludes the idea that leave is to be granted for the mere asking. But while it is remedial and wisely intended to practically extend the time for appealing to parties having meritorious cases, and who in good faith have shown reasonable diligence in availing themselves of the primary right of appeal as well as of the extended indulgence, still a liberal administration of it will not, through mere caprice, extend to parties an unwarranted license to negligently waste the time allotted them, either for taking an appeal or filing their petition for leave to appeal, for the purpose of delay, and thus, under a misnamed legal discretion, invite and uphold cases begun for pure compromise and speculation.

We are of opinion, therefore, that the decision of the presiding justice that the judge of probate had jurisdiction and that justice does not require a revision of his decree, was correct.

The petitioners also allege that the will was not subscribed, as required by R. S., c. 74, §1, by "three credible attesting witnesses, not beneficially interested under the will;" but that, on the contrary, they were not " credible," and were " beneficially interested under the will," inasmuch as they were tax payers in the town of Skowhegan, to which a legacy was given and a devise made, by the 15th and 16th items of the will.

" Credible witnesses, not beneficially interested under the will," are obviously intended to mean witnesses other than those described in St. 1821, c. 38, § 2, and in R. S., (1841) c. 92, § 2, as simply " credible;" for all the words of description must have some meaning. We can not impeach the intelligence of the law makers by considering the clause tautological.

It seems that the common law looked upon some persons as unworthy to obtain credit, and excluded them from being witnesses through fear that if heard, their testimony would be believed, and hence they were denominated not incredible witnesses, for that term the law applied to testimony, but incompetent witnesses — not entitled to the general character of credibility. While those who were free from infamy and certain other disqualifying taints and influences, including that of interest, the law trusted to testify, because of their general character of credibility, and called them competent. Hence " credible," as applied to witnesses, is universally considered to mean competent. But as " credible " witnesses are those free from interest, the clause " not beneficially interested under the will," was introduced for the purpose of eliminating the element of interest from the term credible, which formerly included it, and define and modify the interest which should thereafter disqualify one from sub-scribing a will. In other words, " credible " witnesses, as that term has hitherto been understood, were no longer essential; but witnesses who are competent in every respect other than that of interest, and so far as their interest should thereafter render them incompetent, it must not only be a " beneficial interest," but such as would be directly derived from or " under the will." Otherwise the utmost care and vigilance on the part of a testator, in selecting witnesses to his will, would fail, and his

will, since the omission of certain provisions of the statutes soon to be mentioned, would be void, instead of saving the will at the expense of some provision in favor of the witness.

We think this view is fully warranted by a review of the statutes of wills, as follows: The first statute (St. 1821, c. 38) contained certain provisions, borrowed from the English statutes, making void any beneficial legacy, devise or interest given or made to a subscribing witness, thereby rendering him a competent witness and saving the remaining provisions of the will: and his competency was also restored by his receiving, releasing or refusing to accept, before testifying, any such interest given him by the will, § § 8, 9 and 10. These provisions, in substance, were re-enacted in R. S., (1841) c. 92.

In 1856, the legislature made a total revolution in the common law governing the competency of witnesses so far as their personal interest was concerned, neither excusing nor excluding them by reason of interest as party or otherwise, with certain exceptions immaterial to our present inquiry, but provided that this statute should not affect the law relating to the attestation of wills, St. 1856, c. 266, § § 1 and 3. Subsequently, but during the same year, the legislature commissioned Ex-Chief Justice SHEPLEY to make a new revision of the statutes, and in his report, the provisions in St. 1821, c. 38, above mentioned, were intentionally omitted (as he said in a note to the chapter on wills) "as being superseded or inconsistent with recent enactments allowing persons interested to be witnesses," Shep. Rep. 74, note c. Whether this view was strictly correct or otherwise, those omitted provisions have never re-appeared in any subsequent revision. So that, if a subscribing witness had given him by the will such an interest as was described in those omitted sections, and the same technical construction of the attestation clause were retained as formerly, not only the provision in the will in favor of the subscribing witness, but the whole will would be absolutely and irretrievably void. Hence, instead of liberalizing and enlarging, in the line of modern legislation, the law in regard to the making of wills, the legislation narrowed and restricted it, and introduced new obstructions which might

readily escape the most prudent foresight. Perceiving this condition of things, the legislature, at its first session next after the revision of 1857 (from which those sections were first omitted) took effect, changed the attestation clause by adding, "not beneficially interested" under the provisions of the will," (St. 1859, c. 120, § 1) with the evident intention of liberalizing the statute by declaring in substance that a subscribing witness is competent, whose interest a reading of the will does not show to be one which is vested by and given in the will, and not one which comes indirectly or consequentially by reason of an interest given to some person other than the witness. And this amendment, save the redundant words "the provisions of," has been re-enacted in the subsequent revisions.

A fair construction of the 15th item is that a specific sum of money is given to the town, to hold in trust, "for the worthy and unfortunate poor," resident therein; that the principal is "to be funded," and the income to be "expended," one moiety thereof by a "woman's aid society," and the other by the town. But the town is not authorized to use the latter moiety together with any sum which it may raise by taxation, as a joint fund for the support of its paupers; nor to assist such "worthy and unfortunate poor" only as have a settlement therein; but to distribute it among the residents described, regardless of any pauper settlement of the recipients. Moreover, the clause "to save them from pauperism," was not intended to mean, for the avowed purpose of preventing those who thus enjoyed his bounty from imminent legal pauperism, nor to qualify or in anywise limit or restrict the distribution to such persons as, without it, would necessarily or probably become a town charge; but it was simply intended to express, in the most general and abstract manner, the testator's belief of the good effects which might, in part, incidentally result from this considerate charitable bequest.

The devise also was for a public purpose, from which the inhabitants of the town might derive more or less benefit of a general character, but not of that direct, certain pecuniary nature which would thereby make them "beneficially interested." Such a devise cannot be reasonably expected to lessen the taxes of the inhabitants.

The land devised and the money bequeathed are to be held by the town as trustee for the respective purposes prescribed in the will.   They cannot be rightfully used for any other purposes. No execution issued on a judgment against the town can be levied on the land, since the nature of its tenure is disclosed by the record, to be read of all men.   But if the mode of distributing the income of the bequest should sometimes incidentally happen to keep from public expense some of its recipients and thereby indirectly affect the taxes in some slight degree, that fact would not render these witnesses incompetent.   "It is clear," said WILDE, J., "that unless the witnesses are to be relieved from their taxes by this donation, they are competent. It is possible, though not probable that they may thus be relieved, but neither possibilities nor even probabilities are sufficient to disqualify a witness."   *Hawes* v. *Humphrey*, 9 Pick. 350, 360. *Northampton* v. *Smith*, 11 Met. 390.

In actions where a town is not a party to the record, but is simply indirectly interested, its inhabitants were at common law in this state competent, because their interest was contingent. *State* v. *Stuart*, 23 Maine, 111, 114; *State* v. *Woodward*, 34 Maine, 293; *Fletcher* v. *Som. R. R. Co.* 74 Maine, 434.

But this question has been decided in principle in *Piper* v. *Moulton*, 72 Maine, 155, 158, and is decisive of this branch of the case.   One ground on which the decision was put was that the interest of two of the witnesses, though tax-payers in the town to which a bequest was made in trust, was not "certain and direct."   The opinion was drawn, after thorough argument by learned counsel against the will, by the distinguished chief justice at that time, and it received the unqualified concurrence of our late learned associate, Judge BARROWS, who for years before his twenty-one years' service on the supreme court bench, was judge of probate for Cumberland County.   That opinion was announced and published nearly two years prior to the execution of this will.   It was probably in the mind of Judge DASCOMB, who wrote the will, when the testator came to execute it, and it afforded them the freshest assurance of this court that the friends and neighbors who had known the testator so long

and well, whom he desired to witness his solemn act of making a testamentary disposition of his vast possessions, one-half whereof he thereby devoted to charity's sake, although they were men of substance in the town which he had constituted trustee of some of his public bounty, were not thereby rendered incompetent therefor under our statute.

Furthermore, the petitioners contend that the witness Cushing, even if not disqualified by reason of being a tax-payer in Skowhegan, was "beneficially interested under the will," because, at the time of its execution, he held two shares of stock of the trading corporation called the "Skowhegan Hall Association," to which the testator bequeathed $15,000, "in part to secure a liberal policy in respect to the use of the hall for objects of public interest."

The name of the corporation shows the object to have been to secure a public hall, and realizing that it would not at first be self-supporting the block included stores, which would command good rents. The testimony shows that the hall was always used for "public meetings, temperance meetings, agricultural meetings, lyceum lectures, concerts, graduation exercises of high school, and town meetings, for which the custom was to charge rent, except for town meetings which was free in consideration of $2,200 contributed by the town.

The obvious intention of the testator was to contribute the sum named toward making the hall free for all such "objects of public interest." The phrase "in part" could not have been intended as equivalent to "a part of." It in nowise indicated a desire or intention of devoting an undefined part of the bequest to securing a free use or "a liberal policy in respect to the use of the hall" for public objects, leaving the remainder to be appropriated for the pecuniary benefit of the stockholders. But when considered in connection with the charitable tenor of the will, together with the particular "objects of public interest" for which it had always been used, the clear meaning of the testator was, that while, from knowledge derived during his long presidential tenure, he knew the sum alone bequeathed would

not fully, but would "in part" at least bring about the desired result; and that he thereby contributed what he considered to be his share of whatever sum might be found necessary thereto.

But no part of this legacy conferred on Cushing any direct and certain interest in it. The most that can be claimed is that the legacy gave an interest to a corporation two shares of whose stock—worth $1.50 each—the witness, at the time of the execution, held but disposed of before the probate of the will.

Even if the theory of the petitioners be adopted—that a part of the legacy was to be appropriated to "securing a liberal policy in respect to the use of the hall for objects of public interest," Cushing's interest at best was contingent. The part to be thus applied not being designated in the will, the corporation might, by appropriating substantially the whole of it, deprive any stockholder of any beneficial interest whatever in it.

But we do not place the decision upon this ground, but upon the broader ground that the legislature did not intend to declare incompetent a subscribing witness to a will which contained a legacy to a corporation of whose stock the witness happened to hold one or more shares.

If a testator can give none of his estate to his town for charitable purposes, without thereby disqualifying as witnesses every one of his neighbors and townsmen who know him, and all other citizens of whatever town, county or state, who happen to own property in his town liable to taxation therein; or to a corporation, without thereby rendering incompetent every stockholder therein, then the practicability of legally executing a will —especially since the omission and consequent repeal of the former provisions hereinbefore mentioned—becomes a matter of chance; for it would be substantially impracticable to seasonably ascertain such disqualifying facts.

On the other hand—to repeat what we have substantially already said—we think the legislature intended, by its amendment of the attestation clause, to relieve wills from the dilemma in which the omission and consequent repeal of the early statutory provisions heretofore mentioned had placed them, and

thereby enable a testator to readily know from a perusal of the provisions of his will, whether or not he had therein given to those whom he desired to witness it, a direct and certain interest in his estate; and if their names do not appear therein as devisee, legatee or donee of some direct and certain pecuniary interest named and they are not heirs to any such devisee, legatee or donee—they shall be deemed not "beneficially interested. under the will."

*Exceptions overruled.*

PETERS, C. J., LIBBEY, FOSTER and HASKELL, JJ.,. concurred.

DANFORTH, J., did not sit.