## IN RE NAHUM F. WHEELOCK'S WILL.

October Term, 1903.

Present: ROWELL, C. J., TYLER, START, WATSON, and STAFFORD, JJ.

Opinion filed February 13, 1904.

*Wills—Proponent—Legatee as Witness—Testamentary Capacity—Decree of Probate Court—Prima Facie Evidence.*

The proponent of a will, who is also a legatee, but is not an attesting witness, is competent to testify to the circumstances attending its execution.

When a will was executed after the maturity of the testator, and it appears that there had been no change in his mental capacity since he reached maturity, evidence tending to show his mental condition at any time since that period, or within a reasonable time prior thereto, has a tendency to show his capacity at the time the will was executed.

Letters of a testator are admissible to show his knowledge of the contents of his will.

An adjudication of the Probate Court that one is *non compos*, while it remains in force, is *prima facie* evidence of his insanity, and of his incapacity to make a will.

APPEAL FROM A DECREE OF THE PROBATE COURT refusing to establish an instrument as the will of Nahum F. Wheelock. Ella A. Burgess, proponent. Loie Smith and Mabel Lifinaman, contestants.

Trial by jury at the December Term, 1902, Bennington County, *Munson*, J., presiding. Verdict and judgment for the proponent. The contestants appealed.

It appeared that none of the attesting witnesses saw the testator sign the instrument in question; but that they witnessed what purported to be his signature in his presence and in the presence of each other.

The proponent, Ella A. Burgess, now married, is named as a specific and residuary legatee in the will by the name of Ella A. Galusha. The contestants are two nieces of the testator.

The will is dated July 9, 1888, was made on that day, and the testator died in May, 1901, at the age of fifty-nine years. It appeared that the testator from his birth, or early infancy, was crippled and deformed so that he never walked; that he was almost helpless physically; that he had a defective utterance, so that it was very difficult to understand him; that he could read, write and spell, and had some knowledge of other common school branches; that he had a good memory; played cards and checkers, and liked music. The attesting witness and the proponent were the only persons who testified as to the execution of the will.

*Batchelder & Bates* and *W. B. Sheldon* for the contestants.

It is against public policy that the legatee should testify. *Ames* v. *Parrott*, 87 Am. St. R. 538; *Stevens* v. *Leonard*, 77 Am. St. R. 467.

The jury should have been instructed that the decree of the Probate Court adjudging the testator *non compos* is *prima facie* evidence of incapacity. *Stone* v. *Damon et al.*, 12 Mass. 487; *Breed et. al.* v. *Pratt*, 35 Mass. 115; *Will of Slinger*, 72 Wis. 22; *Leonard* v. *Leonard*, 31 Mass. 280; *White* v. *Palmer*, 4 Mass. 147; *Harrison* v. *Bishop*, 131 Ind. 161.

*Barber & Darling* and *Waterman & Martin* for the proponent.

The proponent, though a legatee, was a competent witness. *Foster's Executors* v. *Dickerson et al.*, 64 Vt. 233; *In Re Buckman's Will*, 64 Vt. 313; *Clark* v. *Clark*, 54 Vt. 489.

Whether evidence offered is too remote, is for the court, and its decision is not reversible in Supreme Court. *Dover* v. *Winchester,* 70 Vt. 418; *Maggi* v. *Cutts,* 123 Mass. 535; *Dale's Appeal,* 57 Conn. 127, at 143.

WATSON, J.　Under exception by the contestants the proponent, a special and residuary legatee under the will, was allowed to testify (in contradiction of the testimony of the attesting witnesses), that at the time the will was executed, one of the attesting witnesses in the presence of the others and when looking at the will, said "Nahum's name is on the will and we never saw him put it there," and that then he said to the testator, "Is this your will and is this your signature?" To which the testator answered, "Yes, sir," and that then the attesting witness put his name on the will.

It is argued that to allow a legatee to testify to the execution of the will is improper as against public policy. At common law in the probating of a will a legatee thereunder was incompetent to testify. This, however, was solely on the ground of pecuniary interest in the outcome of the action. 1 Underhill on Wills, § 192; 4 Kent's Com. (11th Ed.) 598.

Since such disqualification has been removed by statute it is no more against public policy to allow a legatee to testify as a common witness on all questions arising in the probation of a will than it is to allow any other person interested in the result of a suit to give testimony therein. In either case the only reason why it could be against public policy is the interest of the witness, and that ground is no longer available.

In *Foster's Exrs.* v. *Dickerson,* 64 Vt. 233, 24 Atl. 258, subject to contestants' objection and exception, one of the legatees under the will was permitted to testify on behalf of the proponents on all the material issues in the case. The objection made was that the legatee was a party to the issue

raised by the pleadings and on trial and that the deceased testatrix was the other party thereto, and that consequently the witness was not competent by reason of the provisions of R. L. 1002, 1003. The witness was held to be competent. In Kentucky, where they have a statute removing disqualification because of interest, it has been held that thereby all litigants in this kind of an action are put on an equal basis as witnesses, and that a devisee may testify generally in the probating of a will. *Williams* v. *Williams,* 90 Ky. 28. See also *Martin* v. *McAdams,* 87 Tex. 225.

The exceptions state that there was no evidence of any special or marked change in the testator's mental condition or characteristics at any particular period of his life after he attained the ordinary age of maturity. His capacity under consideration was therefore such as he had always naturally possessed since arriving at that age. Any evidence tending to show his mental condition and natural capacity within that period or within a reasonable time before, as he was approaching it, had a tendency to show his capacity at the time the will was executed. All the evidence received on that question, including the letters written by the testator, had such tendency, and there was no error in its reception. *Foster's Exrs.* v. *Dickerson,* before cited. Some if not all of the letters were also admissible as evidence of the testator's knowledge of the contents of the will. *McAuley* v. *Western Vt. R. R. Co.,* 33 Vt. 311.

It appears that the testator was under guardianship as *non compos* at the time the will was executed. The contestants requested the Court to charge in short that the adjudication of the Probate Court in this regard and the appointment of the guardian was *prima facie* evidence of the fact that the testator was *non compos* and incapable of taking care of himself and property at the time of the execution of the will.

Upon this question the Court charged that the fact that the testator was so under guardianship by order of the Probate Court could afford no test for the determination of the question of the testator's capacity; and that in disposing of the issues submitted for the jury's determination they should consider the facts and circumstances of the testator's guardianship in connection with the other circumstances and conditions of his life, but should give them no effect beyond this. An exception was taken to the non-compliance with the request and also to the charge as given upon that question. Thus the question of what weight such an adjudication shall have as evidence bearing upon the mental condition of a testator in the establishment of his will is fairly presented.

The adjudication of a Court of competent jurisdiction that a person is *non compos,* and incapable of taking care of himself and property, is in the nature of a judgment *in rem* upon matters of public interest and concern to which no one can strictly be said to be a stranger, and it is evidence of the facts determined against all the world.   3 Taylor Ev. sec. 1174; 1 Greenl. Ev. sec. 556.

The fact, however, that a person has been adjudged *non compos* and placed under guardianship as such does not of necessity show that a will made by him while that adjudication is in full force and during the pendency of the guardianship is not a good will, "for," says Lord Chancellor COT-TENHAM in *Cooke* v. *Cholmondeley,* 2 Macn. & G. 18, "it is very possible that there may have been a period during which it was competent for the testator to make a will, and that such a will might be valid, though the commission existed. The existence of the commission is, no doubt, a circumstance of extreme suspicion, and one which gives rise to the strongest presumption against the validity of the will; but this pre-

sumption is nevertheless capable of being rebutted." Accordingly, it is the rule of law in England and in this country that such an adjudication while it remains in full force is *prima facie* evidence of the testator's insanity and incapacity to make a will. It follows that the contestants were entitled to a charge according to their request in this respect. The charge given was not a compliance therewith, and the exception must be sustained. 1 Jarm. Wills (5th Am. Ed.) 72; 2 Greenl. Ev. § 690; *Breed* v. *Pratt*, 18 Pick. 115; *Crowninshield* v. *Crowninshield*, 2 Gray, 524; *Hamilton* v. *Hamilton*, 10 R. I. 538; *Harrison* v. *Bishop*, 131 Ind. 161, 31 Am. St. Rep. 422; *Estate of Johnson*, 57 Cal. 529; *In Re Fenton's Will*, 97 Iowa, 192; *In Re Gangwere's Est.*, 14 Pa. St. 417.

*Judgment reversed, and cause remanded.*