FRANCIS A. HUDSON, Caveator of the alleged last will and testament of LUVINA LAYTON, deceased, *vs.* JOHN FLOOD and ANNIE FLOOD.

1. WILLS—WITNESSES—"CREDIBLE WITNESSES"—WHO ARE.

*Rev. Code of* 1915, § 4212, declares that no person shall be incompetent to testify in any civil action because a party to the record, or interested in the event of the suit, except that, in actions or proceedings by or against executors, administrators, or guardians, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called by the opposite party. *Section* 3241 declares that every will must be attested and subscribed by two or more credible witnesses. *Held,* that the beneficiary of a will was a credible witness, the expression "credible witnesses" being equivalent to competent witnesses; and hence a beneficiary may be an attesting witness.

2. WITNESSES—COMPETENCY—PROCEEDINGS—"ACTION BY OR AGAINST EXECUTOR OR ADMINISTRATOR."

A proceeding for the probate of a will is not an "action or proceeding by or against executors or administrators," within *Rev. Code of* 1915, § 4212, declaring that persons interested cannot, in an action or proceeding by or against executors or administrators, testify to transactions with or statements by the deceased; and hence a beneficiary of a will, who was an attesting witness, may testify in a proceeding for its probate.

3. WILLS—ATTESTING WITNESSES—INTEREST.

*Rev. Code of* 1915, § 3242, declaring that a creditor of a testator, or a person taxable for poor relief, may be a witness to a will, though it provide for the payment of the testator's debts, or the relief of the poor, having been enacted long prior to the enactment of *section* 4212, which relieved witnesses from the disability of interest, an attesting witness, who was also a beneficiary of a will, is not incompetent by reason of the earlier statute.

4. COMMON LAW—STATUTES—APPLICABILITY.

Act 25 Geo. II, passed in 1752, provided that any attesting witness, to whom any devise, legacy, or interest shall be given, shall be admitted as a witness to the execution of the will, but the devise, legacy, or interest shall be utterly null and void. The statute further provided that it should extend to the British colonies in America, where the statute of frauds was made applicable by practice or legislation. *Const.* 1776, *art.* 25, declared that the common law of England, as well as so much of the statute law as should have been adopted in practice, should remain in force unless altered by a future law of the Legislature. It did not appear that the act of 25 Geo. II was ever incorporated in the Delaware statutes, or applied by its courts. *Held,* that the mere fact that it was applicable to wills executed in Delaware did not, under the Constitution, work an adoption, and it is not in force.

(*April* 6, 1915.)

Judges RICE and HEISEL sitting.

*Daniel J. Layton, Jr.,* for the proponent of the will.

Statement—Opinion.

*Robert C. White* and *James M. Tunnell* for the caveator.

Superior Court, Sussex County, June Term, 1915.

APPEAL (No. 27, February Term, 1915) from the Register of Wills for Sussex County, admitting to probate the will of Luvina Layton, deceased, against a caveat filed by Francis Hudson. Upon application of the parties the Superior Court directed the question of law involved to be heard by the Court in Banc. The opinion of the latter court being certified to the Superior Court, the decree of the Register was affirmed.

IN THE COURT IN BANC.

PENNEWILL, C. J., BOYCE, CONRAD, RICE and HEISEL, J. J., sitting.

(June 28, 1915.)

STATEMENT.

In the will of the deceased, Annie Flood was named as a beneficiary.

The executors named were John Flood, husband of Annie Flood, and Francis Hudson, brother of the deceased.

The witnesses to the will are John Flood, one of the executors, and Annie Flood, the beneficiary.

The case was argued before the Superior Court at the last February Term, but no decision was rendered, the court considering that the questions of law involved ought to be heard by the Court in Banc and directed them to be so heard.

The only question raised by the record is, whether the witness Annie Flood is a credible witness within the meaning of the Statute of Wills, the credibility of the other witness, under the law, not being questioned.

PENNEWILL, C. J., after stating the facts as above, delivering the majority opinion of the court:

[1] Under the law of this state, *Revised Code of* 1915, §§ 3241 and 3242:

"Every will, whether of personal or real estate, must be in writing and signed by the testator, or by some person subscribing the testator's name in his presence and by his express direction, and attested and subscribed in his presence by two or more credible witnesses, or it shall be void.

"A creditor of a testator may be a witness to his will, although it contain a provision for the payment of his debts. Also a person may be a witness to a will containing a devise, or bequest, to the trustees of the poor of either county, or to any person, or institution, for a public purpose, although he is a taxable for the support of the poor of said county, or for such purpose, and the taxes to which he is liable will, by means of such devise, or bequest, be diminished."

Said *section* 3241, commonly known as the statute of wills, is practically the same as that part of the English statute of frauds, 29 *Charles II*, which required a will of real estate to be signed and attested by credible witnesses.

The question, who was a *credible* person within the meaning of the statute of frauds, was raised and considered in England very soon after the enactment of the statute; and we may regard it as now settled by the decisions in this country as well as in England that the word "credible" as used in will statutes is synonymous with "competent" and is to be given the same meaning by the courts.

It is also well settled that the words "credible persons", as used in the statute mean persons competent to testify at the time of attestation. 1 *Woerner, Am. Law Administration*, § 41; *Page on Wills*, 191; 1 *Underhill on Wills*, 192; 40 *Cyc.* 1109; *Haven v. Hilliard*, 23 *Pick.* (*Mass.*) 10; *Smith v. Goodell*, 258 *Ill.* 145, 101 *N. E.* 255; *Jones v. Larrabee*, 47 *Me.* 474; *Marston's Appeal*, 79 *Me.* 25, 8 *Atl.* 87; *Bruce v. Shuler*, 108 *Va.* 670, 62 *S. E.* 973, 35 *L. R. A.* (*N. S.*) 686, 15 *Ann. Cas.* 887; *Robinson v. Savage*, 124 *Ill.* 266, 15 *N. E.* 850; *Sutton v. Sutton*, 5 *Harr.* 459; *Shaffer v. Corbett*, 3 *H. & McH.* (*Md.*) 532; *Wyndham v. Chetwynd*, 1 *Burr.* 417; 4 *Kent's Com.* 496; *In re Wheelock's Will*, 76 *Vt.* 235, 56 *Atl.* 1013; *Leitch v. Leitch*, 114 *Md.* 336, 79 *Atl.* 600; 2 *Blackstone*, 378; 29 *A. & E.* (*1st Ed.*) 233; *Holdfast v. Dowsing*, 2 *Str.* 1253; 1 *Jarman on Wills*, 71.

In the case in 23 *Pick.* Chief Justice Shaw said:

"The word 'credible' * * * is used to designate a person entitled to be examined in a court of justice."

In *Smith v. Goodell*, in describing a "credible person" the court used this language:

> "A credible witness to the execution of a will is one who, at the time of attesting the will, would be legally competent to testify in a court of justice to the facts which he attests by subscribing his name to the will."

Some of the courts in the above cases said the words mean:

> "Such persons as are not legally disqualified from testifying in courts of justice by reason of mental incapacity, interest, the commission of crime or other cause that makes the witness incompetent, and are not used as descriptive of persons of good moral character or reputation."

Other courts have declared, that the words "credible persons" are superfluous and meaningless because under general law a witness must be "competent" in order to testify to any fact in a court of justice.

In a recent case in our own state, viz., *In re Le Carpentier's Will*, 91 *Atl.* 204, the Chancellor in discussing the word "credible" said:

> "The statute of this state requires that there be two or more 'credible' witnesses to a will. It seems to be settled by uniform decisions that 'credible' is synonymous with 'competent'. The case of *Sutton v. Sutton*, 5 *Harr.* 459, seems to have a different definition, and to make 'credible', synonymous with 'creditable', but it was not so there said respecting the testimony of an attesting witness."

In the *Sutton case*, the court, when charging the jury respecting the witness Jackson, were not construing the word "credible" as used in a will statute, but were speaking generally of the meaning of the word as applied to witnesses whose credibility is attacked, saying they are:

> "Such as may be relied on for truth in reference to the matter they are called on to establish."

We do not regard this instruction of the court as having any bearing on the present question. It could not have had, because we must assume that the court were acquainted with the uniform decisions respecting the word "credible" in will statutes. It is so well settled that the word means competent, and nothing more, that it cannot be now regarded as a debatable question.

Opinion.

Under the common law a beneficiary under a will was not a credible person, and could not be an attesting witness, because of interest.

For that reason he was not competent to testify, but this rule of exclusion applied to interested persons offered as witnesses in all actions, and not to the proof of wills alone.

Such is the general rule in all jurisdictions unless changed by statute.   29 *A. & E.* (1*st Ed.*) 233.

One of the questions submitted to the court for determination is, whether this common-law rule is changed by the statute of this state passed in 1881, *Revised Code of* 1915, § 4212 (*Laws* 1881, *c.* 537), sometimes called the evidence or enabling act, and which provides as follows:

"No person shall be incompetent to testify in any civil action or proceeding whether at law or in equity, because he is a party to the record or interested in the event of the suit or matter to be determined: Provided, that in actions or proceedings by or against executors, administrators or guardians in which judgment or decree may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward, unless called to testify thereto by the opposite party."

This act extends to all persons save one excepted class, and it is natural and logical to believe that if not intended to embrace attesting witnesses who have an interest in the will, the statute would have also excepted them.

It is admitted, that prior to the enactment of this statute, the rule of common law above referred to prevailed in this state.

Was the common-law rule changed by the enabling act?

It would be difficult to use language more comprehensive than the words of the act, "in any civil action or proceeding whether at law or in equity". The Legislature evidently thought the word "action" might not cover everything intended, and therefore added the more general term "proceeding", which is broad enough to embrace every matter respecting which a person might be called to testify.

Certainly the proof of a will, if not technically an action, is a proceeding within the meaning of the act, and any witness competent to give testimony in a court of justice at the time of attes-

tation would be a credible person within the contemplation of the statute respecting wills.

We would have no doubt of this even in the absence of authority, because the language of the act is so clear there is no room for construction and no reason for doubt.

But the great weight of authority sustains the position the court have taken, and very few, if any, cases can be found to the contrary. Cases can be found in which the court deprecated that such is the law, and expressed the fear that because of it fraud might be easily and frequently perpetrated upon aged and weak-minded testators. But even such courts are constrained to say that the Legislature and not the courts must provide the remedy for whatever evil or danger exists.

The court in *Carlton v. Carlton*, 40 *N. H.* 17, commenting on the fact that attesting witnesses are placed around the testator to judge of his capacity and prevent fraud, said:

"But whatever they are required or authorized to do, they are not required to have any other qualifications than those of ordinary testifying witnesses."

An attesting witness to a will in order to possess the requisite competency, should be of such character and have such qualifications as would render his testimony admissible on occasions when the testimony of witnesses is ordinarily received.

Whether the witness is said to be "not competent" or "not credible", the objection in either case is based upon the interest of the witness, and that is the disqualification the statute was designed to remove.

It is unnecessary to quote from or comment upon the authorities cited in support of the proposition that an enabling statute like ours removes the disqualification of a testamentary witness who is interested in the will. But we will refer briefly to the cases in this state, and mainly for the purpose of showing that they are applicable to the question before the court.

It is argued by counsel opposing the will that the *Spiegelhalter case*, 1 *Penn.* 5, 39 *Atl.* 465, can have no application because it involved the competency of an executor, who is not in this

country, and was not in England under the common law, disqualified if he took no interest under the will. It is assumed in the argument that commissions allowed by law would not constitute a disqualifying interest.

It is contended that an executor was a credible and competent attesting witness to a will in this state before the passage of our enabling act, and the English cases, as well as some in this country, including the *Sutton case* in this state, are cited as authorities to sustain that contention.

It is not denied that in England an executor was a competent attesting witness to a will, and there are cases in this country which seem to have followed the English decisions, but illogically we believe in those states where executors are entitled to compensation under the law. In this connection we need do no more than quote from the well-considered Delaware case of *Davis et al. v. Rogers*, 1 *Houst.* 44, the following:

"The general principle is a common-law maxim, that no one who is interested in the event of a cause, can be heard as a witness in the trial of that cause. Applying that principle to the case of an executor called to support the will, we may assume that the English courts regard him as a competent witness, because, according to their system, the executor takes no interest under the will, being entitled * * * to no compensation by way of commissions, or otherwise. He is regarded there as taking an onerous office rather than a desirable employment. * * * But in the United States, in most, if not all of them, it is otherwise as to compensation. In them the executor is entitled to his commissions by the statute law, and this interest has in most cases been held to exclude the executor from being a witness to support the will. * * *

"In this state there has been no adjudication of this precise question. In the case of *Sutton v. Sutton*, which was an issue of *devisavit vel non*, the contest was respecting the codicils of the will. One of the executors, who took an interest under the codicils, was called as a witness and rejected; the other executor, who took no interest under the codicils, was admitted; they were both appointed executors by the will, and neither by the codicils. This case has been spoken of as ruling the principle that a mere executor having no additional interest under the will, might be a witness to support it; but the case does not rule that point. The witness, supposing he had an interest as executor, was still an executor, whether the codicils were supported or not. He therefore had no interest whatever in the result of the case. But the other executor, who took an interest under the codicils, was excluded. So far, then, as the case is an authority on the point, it is against the admission of an executor with an interest. * * * The inclination of all our minds is to regard the compensation as a disqualifying interest, whether derived from express provision in the will, or through the law allowing commissions to executors. It would seem like a refined distinction to say that an executor, with a compensation of one thousand dollars fixed by the will, has an interest;

Opinion.

while one who has commissions to the same amount, fixed by law, has no interest in the question whether it shall be sustained or not."

It is true the witness offered in that case was not an attesting, but was called as a general witness to sustain the will, but the reasoning of the court applies equally to an attesting witness.

The case of *In re Spiegelhalter's Will* is therefore in point, and the following language was warranted by the facts, viz.:

"The probate of a will is a civil proceeding. * * * The executor, therefore, would be a competent attesting witness under the express terms of the statute."

In *Le Carpentier's Will*, already briefly referred to, one of the attesting witnesses was a large stockholder and director in a trust company which was appointed trustee and executor under the will. The Chancellor in this case approved the last-mentioned decision, saying:

"The executor was one of the attesting witnesses, and it was held he was not disqualified to prove the execution of the will. The court relied on the act of 1881, above referred to, as making the executor competent as an attesting witness. * * * The case * * * also decides that a trustee under a will is not disqualified to be an attesting witness, for interest in the event is no longer a disqualification."

It is true that the Orphans' Court in which the *Le Carpentier case* was decided was bound by the decision of the *Spiegelhalter case* in the Superior Court, and it could not do otherwise than follow that decision. But while this is true, we think the unqualified approval by the Chancellor of the reasoning and decision of the Superior Court is of some value.

We think it may be stated as a well-settled proposition of law, and generally recognized that where there is no express language in the statute disqualifying persons taking an interest under the will from acting as attesting witnesses, and there is an enabling act such as ours, which contains no exception of attesting witnesses, persons taking an interest under the will are competent witnesses to prove its execution.

In most of the states the statute 25 *George II* has been adopted, or similar statutes enacted, under which interested attesting witnesses are made competent to prove the will, but are pre-

vented from taking any benefit thereunder. And in those states it has been uniformly held that such a statute was not repealed by an enabling act like ours, but that both statutes would stand— the one an exception to the other, and not inconsistent.

There are a few states however in which practically the same question has arisen as is now before us, and the reasoning of the courts clearly supports the proposition above stated. *Kumpe v. Coons*, 63 *Ala.* 448; *Snider v. Burks*, 84 *Ala.* 53, 4 *South.* 225; *Estep v. Morris*, 38 *Md.* 417; *Harris v. Pue*, 39 *Md.* 535; *Leitch v. Leitch*, 114 *Md.* 336, 79 *Atl.* 600; *Martin v. McAdams*, 87 *Tex.* 225, 27 *S. W.* 255.

[2] The second question to be decided by this court is, whether the probate of a will is an action or proceeding by or against executors or administrators within the meaning of the proviso contained in the enabling act.

We think it is not, and there does not seem to be any authority to the contrary. The question has been expressly decided in this state in the *Spiegelhalter case*, and we need only quote the pertinent part of the opinion delivered by the court, viz.:

"Can it be said, in any proper sense, that the probate of a will is an action or proceeding by or against an executor, and in which judgment or decree may be rendered for or against him as such executor? There are no parties to the action. In contemplation of law it is solely an inquiry as to the validity of a certain paper writing, whether it is or is not the last will and testament of the decedent; and the judgment or decree in such case is either that it is or is not such will. The costs are uniformly taxed upon the estate inquired about, and an executor is in no wise liable to have judgment or decree rendered for or against him, as such, for costs, charges or otherwise."

This decision was approved by the Chancellor in the *Le Carpentier case*.

There are many cases from other states to the same effect, but we cite only the following: *Taylor v. McClintock*, 87 *Ark.* 243, 112 *S. W.* 405; *Martin v. McAdams*, 87 *Tex.* 225, 27 *S. W.* 255; *In re Miller's Estate*, 31 *Utah*, 415, 88 *Pac.* 338; *Hays v. Ernest*, 32 *Fla.* 18, 13 *South.* 451; *Kumpe v. Coons*, 63 *Ala.* 455; *Williams' Ex'r v. Williams*, 55 *Wis.* 300, 12 *N. W.* 465, 13 *N. W.* 274, 42 *Am. Rep.* 708; 40 *Cyc.* 1224, and cases mentioned.

It is argued by the contestants that the enabling act did not

remove the disability of husband or wife as witnesses, so as to enable the one to testify for or against the other, and therefore it was not of general application.

It is manifest that the common-law rule of exclusion of husband and wife as witnesses was based upon a broader ground than the interest either might have in the particular action or proceeding. It was founded upon the unity of husband and wife, and the public policy which demanded the protection of the confidence and harmony of that relation.

It is also argued that it is against public policy to permit a person benefited by a will to testify in its support.

In speaking upon this point the Vermont court in the case of *Wheelock's Will*, 76 *Vt.* 235, 56 *Atl.* 1013, said:

"It is argued that to allow a legatee to testify to the execution of a will is improper as against public policy. * * * Since such disqualification (for interest) has been removed by statute, it is no more against public policy to allow a legatee to testify as a common witness on all questions arising in the probation of a will than it is to allow any other person interested in the result of a suit to give testimony therein. In either case the only reason why it could be against public policy is the interest of the witness, and that ground is no longer available."

In *Snider v. Burks*, the Alabama court said:

"We are deeply sensible of the bad results that may flow from such a rule of evidence, but this is for legislative rather than judicial correction."

[3] It is further argued that *Section* 3242 of the *Revised Code* of 1915, which declares that a creditor of a testator, or a taxable for the support of the poor of the country, may be a witness to a will, taken in connection with the will statute, "said to the people of this state that no other interested persons than those mentioned were competent to attest a will. There can be no other interpretation."

We very much doubt that this statute, if it had been originally enacted subsequent to the enabling act, would have the effect claimed by the caveator; but we are not required to express any opinion on that question. It was enacted long before, and has not been re-enacted, since the passage of the enabling act, until the adoption by the Legislature of the Code of 1915, which was not only subsequent to the death of the testatrix, but after

the will in question was offered for probate. The statute invoked cannot, therefore, have any application to the present case.

[4] The third and remaining question upon which the court is expected to express an opinion, is whether the English statute 25 *George II*, passed in 1752, is in force in this state.

It is admitted that this question is not raised by the record, the question being whether a beneficiary can be an attesting witness, and not whether an attesting witness can take an interest under the will; but it is of such great interest to the bar, and of such vital importance to the parties interested in this action, that counsel on both sides have argued the question very fully with the hope that the court might express an opinion thereon.

The part of the statute referred to that is material to the present case is in the following words:

"That any person shall attest the execution of any will or codicil, which shall be made after the twenty-fourth of June, 1752, to whom any beneficial devise, legacy, estate, interest, gift or appointment of or affecting any real or personal estate, other than and except charges on lands, tenements or hereditaments, for payment of any debt or debts, shall be thereby given or made, such devise, etc., or appointment, shall so far only as concerns such persons attesting the execution of such will or codicil, or any person claiming under him, be utterly null and void; and such person shall be admitted as a witness to the execution of such will or codicil, within the intent of the act of 29 *Car. II.*

"This act shall extend to such of the British colonies in America where the 29 *Car. II* is by act of assembly made, or by usage received as law; or where by act of assembly or usage the attestation and subscription of a witness or witnesses are made necessary to devises of lands, etc., and shall have the same force and effect in the construction of, or for the avoiding of doubts upon, the said acts of assembly, and laws of said colonies, as the same ought to have in the construction of, or for the avoiding doubts upon, the said act in England," etc.

*Article* 25 of the *Constitution* of this state, 1776, provided that:

"The common law of England, as well as so much of the statute law as has been heretofore adopted in practice in this state, shall remain in force, unless they shall be altered by a future law of the Legislature."

It is manifest that the statute in question, which was passed for the protection of innocent beneficiaries in wills, is in force in this state if it has been adopted in practice here, and has never been altered or repealed.

Has this English statute been adopted in practice in this state?

No authorities have been produced, and none perhaps can be found, which are of much assistance to the court in determining this question. The court must, therefore, decide for themselves what is meant by the words in our Constitution—"adopted in practice."

Do they mean some act of the Legislature or the bar, or such a general usage or practice in the profession, as would clearly indicate that the statute was expressly made a law of the state or has been recognized by the bar and courts as such? If that is the meaning of the term then clearly the statute is not and never has been in force in Delaware.

Some of the states adopted, by legislative acts, English statutes enacted prior to the Revolution which were applicable to their conditions. In other states such statutes were adopted by actual usage in the practice, and were recognized by the bar and the courts as existing law. It is not contended that the statute in question was ever made a law of the state by legislative enactment, or that there is any evidence that it was ever actually used in practice or recognized and acted upon by the bar and the courts as a law of the state.

But it is claimed that the statute may have become a law within the meaning of the Constitution, even if it cannot be shown that it was used or acted upon or was recognized and approved by the bar and the courts as a law of the state. It is insisted that it became a law of the colonies, not only where it was by act of assembly made a law, or by usage received and adopted as such, but also wherever the attestation of witnesses was necessary to devises of land, provided such a law was adapted to the local conditions. It is not, and cannot, of course, be contended that the statute in question was not adapted to the conditions existing in this state at the time of its passage. Therefore, it is argued, the statute, after its passage, became a part of the law of the state, and, not having been repealed or altered by a future law of the Legislature, remains in force.

If such is not the case, then, it is insisted, the words "adopted

in practice" mean a general usage and practice by the profession, or a general recognition and approval by the bar and courts, which would have to be affirmatively shown. If this be so, there are many English statutes, passed before our Revolution, entirely adapted to our conditions, and believed to be in force here, which in fact are not in force because they cannot be shown to have ever been actually adopted into practice in this state.

As we have already said, the statute 25 *George II* has become the law in most states, and it seems to be in harmony with the feeling of the courts in all the states. But wherever it has been made the law it has been done either by legislative enactment or by clear usage and adoption in practice. It has nowhere been held to be in force unless there was tangible evidence of its enactment or adoption. We have the same feeling that other courts have expressed in favor of this or some other law that would make an attesting witness incapable of taking an interest under the will, but we do not think any court has had the feeling that the entire will should fail because one of the beneficiaries was named as an attesting witness.

We do not think there is much significance in the fact that, in the revision of the laws of the state made by George Reed, Esq., and contained in *Volumes* 1 and 2 *Delaware Laws*, no mention is made of the statute 25 *George II*. Neither do we think the fact that Nicholas Ridgely, Esq., and Willard Hall, Esq., who were authorized by legislative act January 31, 1824, to revise and digest the laws of the state and report to the next General Assembly what "English statutes are in force in this state to the end that the same may be included in the *Revised Code*," did not report that statute 25 *George II* was in force, can be regarded as proof that such statute was not in force. It does not appear that in the making of *Hall's Digest* the direction of the Legislature as to English statutes was followed at all, for there is no reference therein to any English statutes. The *Digest* was meant by its makers to contain the statutes passed by the Legislature of this state; the preface to the work stating:

"The object of the General Assembly that this edition shall contain the law as it stands in force upon our acts of assembly has been carefully observed."

But we do regard as of much significance the fact, that in no revision or codification of the laws of this state, since the Constitution of 1776, has the statute 25 *George II* been included or referred to; and the further fact, that in no statute of wills, or other statute, enacted since the passage of the act in question, has such act been included, referred to or in any manner recognized as a law of this state. These facts or circumstances, together with the further fact that there is nothing whatever to show that said act was ever adopted in practice in Delaware convince the court that it is not, and never has been, in force in this state.

To assume that the statute 25 *George II* was adopted in practice in this state, or that it became a law merely because it was applicable to existing conditions would, we think, be not only arbitrary but dangerous, because it would be a recognition of all other English statutes passed before our Revolution, as laws of this state, if they appeared to be applicable to existing conditions whether actually adopted in practice or not, and whether known to the bar or not.

There is one authority which is in harmony with our conclusion, and that is the part of the report of the judges of the Supreme Court of Pennsylvania on the subject of "the ascertaining of such English statutes as are in force in this Commonwealth," which contained their "observations, connected with the subject of the report, and tending to explain the principles which have governed them in the execution of the trust which the Legislature have been pleased to confide in them." 3 *Bin.* (*Pa.*) 595.

The "observations" deemed pertinent to the present question are the following:

"With respect to English statutes enacted since the settlement of Pennsylvania, it has been assumed as a principle that they do not extend here, unless they have been recognized by our acts of assembly, or adopted by long-continued practice in courts of justice. Of the latter description there are very few, and those, it is supposed, were introduced from a sense of their evident utility. As English statutes they had no obligatory force, but from long practice they may be considered as incorporated with the law of our country."

Another principle acted upon by the judges was this:

"Whenever our own Legislature had enacted a law on the same subject on which an English statute was to be found, it has been supposed that the English statute had no force here, even though it contained more extensive provisions than our own act of assembly; because it was reasonable to presume, that our assembly were acquainted with the English statute, and designedly omitted some of its provisions."

The Pennsylvania act provided:

"That the common law, and such of the statute laws of England as have been heretofore in force in the said province, shall be in force, except as is hereafter excepted."

Our constitutional provision is somewhat different from the Pennsylvania act, but the principles adopted by the judges in reaching their decision would be applicable in either case.

After a very careful consideration of this case, which has been so fully and ably argued on both sides, the court are of the opinion,

1. That the attesting witness, who is a beneficiary under the will in this case, is a credible witness within the meaning of the statute, and competent to prove its execution.

2. That the statute 25 *George II*, is not in force in this state, the same never having been enacted by the Legislature or adopted in practice.

3. That the decree of the register should be sustained and the appeal dismissed.

BOYCE, J., dissenting.

After a careful consideration of the able arguments made in this case and also a like examination of the authorities, I am unable to concur with the opinion as expressed by the majority of the court, except that part which holds that the English statute of 25 *George II* is not in force in this state.

I cannot escape the conclusion that the statute of wills (*Chapter* 84, *Revised Code of* 1893, *p.* 635) is independent of and unaffected by *Chapter* 537, *Volume* 16, *Laws of Delaware* (*Revised Code of* 1893, 798), which abolished the common-law rule excluding, on account of interest, the evidence of witnesses in courts of jus-

tice and of parties to actions and suits. I am of the opinion that the latter statute has nothing to do with witnesses to wills, but that the statute of wills imposes a disability of its own by which a person having a beneficial interest in a will, at the time of the execution thereof, is excluded from being an attesting witness, wholly distinct from the disability in consequence of interest under the general rule at common law.

The two statutes in question are not positively repugnant to each other and irreconcilable. It requires no strained and unreasonable construction for them to stand together and be administered without conflict or inconvenience. Indeed, it seems to me that they deal with different subjects, and that one is not affected by the other. I think this is a fair and reasonable conclusion, consistent with the rules of statutory construction as well as with public policy; and it guards the policy of the statute of wills and prevents frauds. As was said in *Hawes v. Humphrey*, 9 *Pick (Mass.)* 350, 20 *Am. Dec.* 481:

"The object of the statute was to prevent frauds as well as perjuries. Wills are frequently made by a testator in *extremis*, or when he is greatly debilitated by age or infirmity, when frauds may be practiced upon him with facility by the crafty and designing; and it was the intention of the statute to guard against such practices, and to protect the testator by surrounding him with disinterested witnesses at the critical and important moment when he is about to execute his will. They are to be disinterested and credible also, at the time of attestation, because in some sense they are made the judges of the testator's sanity."

I think the words "credible witnesses," used in the statute of wills, mean disinterested as well as otherwise competent witnesses. And *section* 4 of the act furnishes the strongest inference that this is so. By this section a creditor of the testator, although provision is made in the will for the payment of his debts, or a taxable, although the will contains a devise, or bequest, to the trustees of the poor, or to any person, or institution, for a public purpose, may be a witness to the will. This exception clearly shows it was not the intention of the statute that a person otherwise beneficially interested under the will should be a witness. It seems to me that the statute of wills must be read and understood in connection with the subject-matter thereof, the evils to be

avoided and the intention to safeguard the property interests of persons approaching death. The test to be applied in construing the two statutes in question is not the qualification of witnesses generally in legal proceedings.

I find that an executor, not otherwise interested in a will, is, under statutes similar to ours, according to the weight of authority, competent to witness a will, but I am equally clear that it was both unnecessary and erroneous to base such competency upon the statute permitting parties in interest to testify in civil actions as was done in the case of *Spiegelhalter's Will*, 1 *Penn.* 5, 39 *Atl.* 465. The conclusion reached by the court in that case was, I believe, correct, but the ground upon which the decision should have been based is that the executor took no beneficial interest under the will.

A fuller discussion of the questions raised in this case is unnecessary in a dissenting opinion.

I am constrained to hold that, inasmuch as Mrs. Flood is a beneficiary under the will, she is not a credible witness within the meaning of the statute, and the will should be held void for want of two credible witnesses.

The opinions were certified to the Superior Court, which thereupon made the following order:

And now, to wit, this twenty-eighth day of June, A. D. 1915, the opinion of the Court in Banc having been duly certified to this court, in accordance therewith, it is now ordered, adjudged and decreed by this court that the decree of the register of wills, in and for Sussex County, admitting to probate the last will and testament of Luvina Layton, deceased, be and the same is hereby affirmed, and the said appeal from said decree dismissed.

And it is further ordered, adjudged and decreed that the costs in this case before the register of wills, in the Court in Banc, and in the Superior Court, including expenses of attorneys on both sides, be, and they are, hereby taxed in the sum of two hundred and twenty-five dollars and thirty-one cents, to be paid out of the estate of the said Luvina Layton, deceased.