ELLIS LORD et als., Appellants from decree of Judge of Probate,

ESTATE OF LEONARD LORD.

Somerset.   Opinion. September 25, 1909.

*Wills.   Revocation.   Lost Will.   Evidence.   Presumptions.   Revised Statutes,
chapter 76, section 3.*

1.  The existence of a lost will must be proved by clear, strong, satisfactory
    and convincing evidence.
2.  If an instrument propounded as a revocation of a will be in the form of
    a will, it must be perfect as such and subscribed and attested as required
    by the statute.
3.  Neither water stains upon a will nor pencil marks thereon will be held
    to indicate the revocation of the will, in absence of declarations of the
    testator made at the time, when the evidence shows that the presence of
    the stains and pencilings may have been the result of accident or made for
    a purpose other than immediate revocation.
4.  When a will is once regularly made, the presumption of law is strong in
    its favor and the intention to revoke must be plain and without doubt.

On report.   Appeal from decree of Judge of Probate.   Decree
affirmed.

Appeal from the decree of the Judge of Probate, Somerset
County, allowing a certain instrument dated May 17, 1903, as the
last will and testament of Leonard Lord, late of Detroit in said
county.   The "reasons of appeal" were as follows:

"1st.   Because said instrument so purporting to be the last will
and testament of said Leonard Lord and so allowed is not the last
will and testament of said Leonard Lord.

"2nd.   Because at the time of the making and executing of said
instrument so allowed as the last will and testament of said Leonard
Lord, he, the said Leonard Lord, was not of sound and disposing
mind and memory.

"3d.   Because said will so as above allowed was made and
signed by said Leonard Lord under undue and improper influence
and was procured to be made and signed by said improper influence.

"4th. Because said instrument purporting to be the last will and testament of the said Leonard Lord as allowed, was revoked by the said Leonard Lord by his making and signing a subsequent will duly and legally executed as a will is required to be under the laws of the State of Maine.

"5th. Because said instrument. purporting to be the last will and testament of the said Leonard Lord as allowed, was revoked by the said Leonard Lord, in his lifetime, by being intentionally cancelled, torn, and obliterated by the said Leonard Lord or by some person by his direction and in his presence."

After the evidence had been taken out in the appellate court, the case was reported to the Law Court for a decision upon the competent and legally admissible evidence.

*W. S. Townsend, Louis C. Stearns, Charles F. Johnson, and Sewall W. Abbott,* for plaintiffs.

*Manson & Coolidge,* for Heman Norton, executor, et als.

*Herbert M. Heath,* for Fred R. Lord, legatee.

The case as stated by Mr. Justice BIRD, who prepared the opinion, is as follows:

Leonard Lord died on the thirteenth day of June, 1906, leaving neither widow nor lawful issue. The will admitted to probate, which purported to be executed on the eleventh day of May, 1903, was found shortly after his death in a secretary with other papers among which were sundry policies of insurance, all of which had expired except one, the draft of a will admitted to be in the handwriting of Abel Davis, Esq., late of Pittsfield, Me., and the draft of, or memorandum for, a will in the handwriting of one Daisy P. Bartlett. The probated will, after giving numerous money legacies, provided for his widow, if any, the care of his cemetery lot, disposed of the residue among five legatees and appointed Heman Norton his executor. This will was typewritten except the provision for the care of the cemetery lot, the residuary clause and some unimportant particulars which were, it is admitted, in the handwriting of said Davis who is one of the witnesses. Three of the items of this will were marked thus X in lead pencil, lead pencil lines were drawn through sundry words and expressions and

sundry interlineations were penciled upon it in the handwriting of said Davis. The signatures of testator and witnesses were not marked. The paper upon which this will was written was water stained as were certain other papers, including the unexpired policy of insurance, which were found in the secretary, and several bank books found in the safe of deceased. Neither the water stains nor the pencil marks rendered the will illegible.

The provision for the widow, if any, contained in this will was as follows: "In case I should marry and leave a widow, I give and bequeath to her the sum of five thousand dollars. This shall be in full for all claims by inheritance or otherwise she may have to my estate, by virtue of said marriage relation between us."

The draft in the handwriting of Mr. Davis followed the probated will and the pencilings thereon with such changes as a careful and intelligent scrivener would make. The clause relating to the widow was as follows, "In case I should marry and leave a widow I give and bequeath to her the sum of five thousand dollars. This to be in full of all claims of inheritance, dower or otherwise that should or might to my estate by virtue of said marriage relations between us; or in lieu of my marrying if I should have a housekeeper, who should stay with me and see me through and use me well, care for me properly in sickness as well as health, then she is to have said sum of five thousand dollars."

One Daisy P. Bartlett was at the home of Leonard Lord from Saturday, July 22, 1905, until Friday, August 25, following. Mr. Lord was evidently desirous of marriage with her, or, failing that, to secure her services as housekeeper for the remainder of his life. She states that she had been at his house possibly two weeks and a half — a little while — when he one day came home from Pittsfield, laid a paper in her lap and said "There I have made my will, and I want you to read it;" that she complied; that it contained a provision for the benefit of a housekeeper; that it was written with a pen by Abel Davis, was signed by Lord and that the names of Abel Davis and two other witnesses were signed to it; that she returned the paper to him and that he placed it in the secretary; that on the following morning, he again produced the paper, asked

her to read it again and decide to stay. She further states that, as she was to have three weeks vacation, she had but a short time to decide; that she read the paper again, perhaps not thoroughly, and decided to stay two weeks longer; and that on the Tuesday night prior to her departure on Friday, she told Mr. Lord of her determination not to remain, when he remarked that he was glad he had made his will and that Ellen Norton was provided for as his wife wished. Miss Bartlett can remember but little of the contents of this August will, save that she has the impression that Mrs. Norton received $2000, Mrs. Head $1000, Mrs. Brown $600, Fred Lord the home place. She states that there were nine residuary legatees, of whom she mentions the names of the five residuary legatees of the probated will and of Mrs. Brown, and that Heman Norton was appointed executor.

Two letters written in the summer of 1906 by Miss Bartlett were in evidence in which she states that the paper above referred to— the alleged August will—was signed by Leonard Lord and witnessed by two people. Two witnesses also testify to her making to them statements like in substance during the same summer and that she stated that by this will Elizabeth Brown was to receive six hundred dollars and that provision was made for the housekeeper in the sum of five thousand dollars and that she could not recollect the other provisions. In both the letters and the statements she disavows recollection of the names of any of the witnesses of the will.

Miss Bartlett testifies that at the dictation of Lord, he having the alleged August will and other papers before him, she wrote the draft of a will which she identifies as the one found after his death with the will offered for probate and the draft in the handwriting of Abel Davis. This she thinks was made before the alleged will was brought to her by Davis although, when confronted on cross examination by a letter written by her in the summer of 1906, in which she states it was some two weeks after the production of the alleged will of August 1905, she does not deny the statement of the letter. Later she fixes the date as "a little while before I came away, August, 1905." This draft follows quite closely the Davis draft, two or three legacies being omitted, one or two being added and amounts changed in

some instances. The clause as to the widow is "In case I should marry and leave a widow, I give and bequeath to her the sum of five thousand dollars : this to be in full for all claims of inheritance, dower or otherwise should or might to my estate by virtue of said marriage relations between us, or in lieu of any marrying, if I should have a housekeeper who should stay with me and see me through and use me well, care for me in sickness as well as in health, then she is to have said sum of five thousand dollars." Miss Bartlett has no recollection of having seen the will of 1903 or the Davis draft prior to the death of Leonard Lord.

One Carr testifies that in the latter part of the summer or early part of the fall of 1905, he thinks in August, he was called into the office of Davis in Pittsfield, that there were also there Leonard Lord, Abel Davis, and one Corey ; that. Davis said there was a document he wanted me to sign, that Davis read part of it, that he cannot remember all he read "but the last part of it was 'the will and testament of Leonard Lord.'" He is unable to state if Davis and Corey signed it and is not positive if it was a will. He states he signed it and put his name under that of somebody else and remembers of no other signature being made upon the paper after he entered the office. He was never in the office when Mr. Lord was there but once.

One Corey, a constable, also called by contestants, says he was in the office of Davis in the summer of 1905 with Lord and Davis. He is unable to state that he witnessed any paper, has no recollection of being requested to do so ; admits he signed some papers but supposed they were writs. Later, he states, Mr. Carr was called into the office by Davis and signed some paper but does not know if it was the same he signed. He heard Davis say something about a will but cannot say what he said. He did not see Lord sign any paper. Neither Carr nor Corey testify that they saw the signature of Leonard Lord upon the paper signed by either of them nor that he made any remark whatever.

One Foster called by proponent testifies that he was a deputy sheriff during the year 1905 and on the 28th day of September of that year was in the office of Davis at Pittsfield, that Lord and

Carr were there but that he has no recollection of Corey being there or any one else; that he fixes the date from the fact that he made service on that day for Davis of a writ which bears date the same day and which he saw Davis make; that he never saw Lord there but once and Lord and Carr there except at that time. Neither Carr nor Corey deny that Foster was present when they were in the office with Lord and Davis.

No will of Leonard Lord other than that admitted to probate has been found. Abel Davis died on the sixth day of October, 1905.

SITTING: EMERY, C. J., WHITEHOUSE, SPEAR, CORNISH, KING, BIRD, JJ.

BIRD, J. This appeal from the decree of the Judge of Probate of Somerset County approving and allowing the last will and testament of Leonard Lord is reported to this court from the Supreme Court of Probate for decision upon so much of the evidence as is legally admissible.

It is admitted that the will of 1903, which was allowed by the Judge of Probate, was at the time of its execution, a valid will but it is the contention of the contestants that the testator in the summer of 1905 made a second will, lost or destroyed, which, by reason of its inconsistent provisions worked a revocation of the earlier will.

The existence of a lost will must be proved by evidence clear, strong, satisfactory and convincing: *Connor* v. *Pushor*, 86 Maine, 300, 302; The evidence must be strong, positive and free from doubt; *Newell* v. *Homer*, 120 Mass. 277, 280; See also *Liberty* v. *Haines*, 103 Maine, 182, 190-2. If the instrument, propounded as a revocation of a will, be in the form of a will, it must be perfect as such and subscribed and attested as required by the statute; *Doane* v. *Hadlock*, 42 Maine, 72, 74; *Laughton* v. *Atkins*, 1 Pick. 535, 541; See also *Kimball* v. *Morrell*, 4 Maine, 368; *Dunlap* v. *Glidden*, 31 Maine, 510.

Neither of the alleged witnesses to the will alleged to have been made in the office of Mr. Davis saw the signature of Leonard Lord

upon any instrument and it may be doubtful, at least, if Lord's acknowledgment flowing from the request of Davis to Carr to act as a witness, if made, dispenses with proof of his signature: II Greenl. on Ev., § 676. Nor does the testimony of Carr and Corey as to the attestation of the alleged will appear to meet the degree of proof required. Neither is certain that he subscribed a will as a witness, neither is certain that the other signed the same instrument and neither can state that any third witness signed. And we are not aware of any presumption that under the circumstances Abel Davis signed the paper signed by either of the other witnesses. But it is unnecessary to determine these questions, since, as we must find as matter of fact from the testimony of Mr. Foster that the transaction in the office of Mr. Davis took place on the twenty-eighth day of September, 1905, there is no proof whatsoever of the contents of that paper,—that it contained a revocation clause or made dispositions of property inconsistent with the will of 1903. It cannot, therefore, whether duly executed or not, be material evidence tending to prove revocation of the will of 1903.

The testimony of Daisy P. Bartlett as to the attestation of the alleged will shown her by Lord in August, 1905, is also insufficient to prove due attestation of the will. As she is unable to give the names of two of the alleged witnesses, there can be no proof of their signatures. Her testimony as to the alleged signatures of Abel Davis as a subscribing witness, if offered in support of its genuineness was clearly inadmissible as it is not shown that she had ever seen him write or was then familiar with writings acknowledged to be his, or that she was an expert in handwriting who had qualified herself to testify in the case. Moreover, in view of her oral declarations and those contained in her letters made and written in the summer of 1906 to the effect that the alleged will was signed by two people as witnesses and that she had no recollection of the names of any of the witnesses, the evidence that Abel Davis' name was upon the alleged will is neither convincing nor free from doubt. It is not necessary to add that, as we have found that the transaction in Mr. Davis' office occurred in September, the alleged August will can receive no aid therefrom.

It is not believed that the contestants very seriously urge that the water stains and pencilings upon the will of 1903 worked a revocation of that instrument. There is no extraneous evidence of the circumstances attending the water staining or the pencilings nor evidence of declarations of the testator made when they were made. The water stains do not render the will or any part of it illegible and are apparently the result of an accident in which the unexpired policy of insurance and sundry bank books of the testator were equally involved. The pencilings were made by the attorney of testator and, if assumed to have been made by his direction and in his presence (R. S., c. 76, § 3,) of which there is no evidence, we must conclude, in view of the draft made by the same attorney closely following it and its interlineations and containing a revocation of all former wills and in view of the continually manifested desire of the testator not to die intestate, that the pencil changes were but instructions for the making of a later will which should revoke the earlier and do not indicate that they were made with an intention of immediate revocation. Where a will is once regularly made, the presumption of law is strong in its favor, and the intention to revoke must be plain and without doubt. *Throckmorton* v. *Holt*, 180 U. S. 552, 584-585, 587. See *Strong's Appeal*, 79 Conn. 123.

The will of 1903 was found in the secretary and not in the safe of the testator, where his more valuable papers were kept, but this fact taken in connection with either the water stains or the pencilings, or both, does not afford evidence from which an animus revocandi can be found or presumed: *Throckmorton* v. *Holt*, supra: *Williams* v. *Williams*, 142 Mass. 515: *Fellows* v. *Allen*, 60 N. H. 439.

*Decree of the probate court affirmed with costs.*