### In re ESTATE OF Ethel ROACH.

Supreme Judicial Court of Maine.

Argued June 5, 1991.
Decided July 29, 1991.

---

Jim Mitchell (orally) and Jed Davis, P.A., Augusta, for appellant Edward J. Moss.

Daniel C. Purdy (orally), Stephen A. Little Associates, Rockland, for appellee/cross-appellant, Town of Thomaston.

Frederick M. Newcomb, III (orally), Rockland, for appellee Margaret W. Mills.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

■ This case arises out of a will contest involving the Estate of Ethel Roach, who died domiciled in Knox County. As its primary issue, the appeal presents the question whether a probate judge must transfer the administration of an estate to an adjoining county if the judge is a creditor of a party contesting a proffered will. Directly at issue is 4 M.R.S.A. § 307 (1989), which provides in pertinent part:

> When a judge ... of probate is interested in his own right, trust, or in any other manner, or is within the degree of kindred, by which in law he may, by possibility, be heir to any part of the estate of the person deceased, ... such estate shall be settled in the probate court of any adjoining county....

In the case at bar, the probate judge was in his individual capacity a creditor of Edward J. Moss, who appeared in the Knox County Probate Court to contest a will of Mrs. Roach offered for probate by the Town of Thomaston. Sensitive to a possible question of judicial ethics, the judge, relying upon another provision of the probate statutes, asked the probate judge from Lincoln County to sit in his place in Knox County. *See* 4 M.R.S.A. § 306 (1989).[1] After trial of the will contest before the visiting judge, Moss moved for a new trial, challenging among other things the authority of the Knox County Probate Court to have rendered judgment. We affirm the visiting judge's order denying Moss's motion and

---

**1.** 4 M.R.S.A. § 306 authorizes probate judges to "interchange service or perform each others' duties when they find it necessary or convenient...."

hold that section 307 does not require the transfer of the settlement of a probate estate to a different county when the probate judge is merely a creditor of a party to a will contest. Any problem in judicial ethics is adequately addressed by the Knox County probate judge's recusal of himself in the Knox County proceeding.

On November 22, 1988, Edward Moss and his wife were divorced by judgment of the District Court (Rockland), which also ordered Moss to pay $1,000 in attorney fees to Barry M. Faber, his wife's attorney. At all relevant times, Faber was also the Knox County probate judge. On May 9, 1989, Mrs. Roach, a neighbor of Moss's in Thomaston, died. The Town of Thomaston, the beneficiary of Mrs. Roach's estate under a 1970 will, petitioned the Knox County Probate Court for formal probate. After Moss entered the proceedings with a petition in opposition to the Town's petition, Judge Faber, who had not yet received from Moss his divorce case fee, requested Probate Judge Thomas A. Berry of Lincoln County to preside over the probate of decedent's will in Knox County.

█ At the trial before Judge Berry, Moss attempted to prove the existence of a lost will superseding decedent's 1970 will. According to Moss, decedent wanted to repay him for his assistance in doing household chores and running errands. Moss testified that shortly before Thanksgiving 1981, on a visit to the home of Mrs. Roach and her husband, who was then living, the Roaches showed him their new wills. Although Moss admitted that he never read the wills, he testified that both decedent and her husband told him that he was to get all of their assets after both of them died. Moss testified that over the next few years, as their health deteriorated, the Roaches often reminded him that he was their ultimate beneficiary. According to Moss, the Roaches kept their wills in their house until early January 1988, when dece-

dent told him that her niece, Margaret Mills, had stolen them.[2]

Secretaries and attorneys of the Rockland law firm that had drafted the 1970 wills had no knowledge that the Roaches had ever executed later wills in 1981, but they did find in the firm's files photocopies of wills drafted for the Roaches in 1979. When Mr. Roach died in September 1988, his widow probated his 1970 will with the assistance of the same law firm and never mentioned that her husband had ever revised that will.

In its May 24, 1990, judgment, the Knox County Probate Court (Berry, J.) rejected Moss's "implication ... that in 1981, William and Ethel Roach executed superseding wills, leaving everything to Mr. Moss and that Margaret Mills stole these wills." Believing the testimony of the attorneys and their staff, the court determined that the evidence "support[ed] only the existence of a 1981 revision of the 1970 will and not the 1981 Moss will." Consequently, the court probated the 1970 will.

After the judgment, Moss moved for a new trial, alleging that the proceedings in the Knox County Probate Court were void because the whole settlement of the Roach estate should have been transferred to an adjoining county pursuant to section 307 and that the judgment was against the weight of the evidence. Both the Town and Moss also moved for costs pursuant to M.R.Prob.P. 54(d)(1) and 18-A M.R.S.A. § 1-601 (1981). In a December 18, 1990, order, Judge Berry denied the motion for a new trial. Rejecting Moss's contention that the creditor's claim that Judge Faber had against him required that the judge transfer the entire settlement of decedent's estate to an adjoining county rather than ask another probate judge to sit in his place in the Knox County Probate Court, Judge Berry determined that section 307 "makes it clear that a 307 conflict means a conflict arising from an interest of the Probate Judge in the estate in issue." The

---

**2.** Before the trial Mills herself had petitioned the probate court to contest the 1970 will, arguing that her aunt had died intestate. By the time of the trial, however, Mills had entered into a settlement agreement with the Town whereby, in exchange for dropping her challenge to the Town's petition, she would receive 50% of whatever the Town received if the 1970 will was allowed.

judge clarified some of his findings of fact, but nevertheless rejected Moss's contention that his decision admitting the 1970 will to probate was contrary to the weight of the evidence. Finally, Judge Berry denied costs to both moving parties. Moss filed a timely appeal and the Town filed a timely cross-appeal from the order.

## I.

### Section 307

We agree with Judge Berry that section 307 did not require Judge Faber to transfer the settlement of the Roach estate out of Knox County. Section 307 is inapplicable to the type of interest that Judge Faber had in the probate of Mrs. Roach's estate by virtue of his status as Moss's creditor. The relevant portion of section 307 reads as follows:

> When a judge or register of probate is interested in his own right, trust, or in any other manner, or is within the degree of kindred, by which in law he may, by possibility, be heir to any part of the estate of the person deceased, or is named as executor, trustee or guardian of minor children in the will of any deceased resident of the county, such estate shall be settled in the probate court of any adjoining county, which shall have as full jurisdiction thereof as if the deceased had died therein.

Moss is unable to persuade us that the phrase "or in any other manner" covers the interest that Judge Faber had.

In *Marston, Petitioner*, 79 Me. 25, 34–36, 8 A. 87, 88–90 (1887), we analyzed the meaning of the phrase "or in any other manner" in light of the legislative history of the forerunners of section 307. In 1818 Massachusetts enacted a statute providing for the transfer of the entire settlement of a probate estate to an adjoining county when the probate judge had an interest in

the estate. *Id.* at 34, 8 A. at 88–89. The statute provided that: "[W]henever any Judge of Probate shall be interested in the estate of any person deceased within the county of such judge, such estate shall be settled in the Probate Court of the most ancient next adjoining county...." 1818 Mass Acts ch. 190, § 5.[3] Instead of specifying generally as did the Massachusetts General Court that the interest of the judge had to be "in the estate," our legislature defined specifically the interests for which transfer was required when it enacted a similar provision following Separation:

> [W]henever any Judge of Probate shall be interested as heir or legatee, creditor or debtor, or within the degree of kindred which by the laws of this State, he might by any possibility be heir in the estate of any person deceased, within the county of such Judge, such estate shall be settled in the Probate Court of the most ancient next adjoining county....

P.L.1821, ch. 51, § 2.

In 1841 Maine amended its statute in three significant respects. The amendment eliminated the precise language of the 1821 statute that defined the interests in the estate that made transfer to another county necessary, added a provision mandating transfer if the judge held an interest in the estate in trust, and added general language providing for a transfer when a judge's interest was "in any other manner":

> Whenever any judge of probate shall be interested, either in his own right, or in trust, or in any other manner, or be within the degree of kindred, by means of which, by law, he might, by any possibility, be heir to any part of the estate of any person deceased, such estate shall be settled in the probate court of the most ancient adjoining County....

P.L.1841, ch. 171, § 15 (effective Apr. 16, 1841), *amending* R.S. ch. 105, § 18 (1841).

---

3. That the 1818 statute was concerned only with a judge's direct interest in an estate comports with the law of judicial disqualification in the early 19th century. "The common law of disqualification, unlike the civil law, was clear and simple: a judge was disqualified for direct pecuniary interest and for nothing else." Frank, *Disqualification of Judges*, 56 Yale L.J. 605, 609 (1947). Not until later in the century, in response to "changing economic institutions," was the principle of pecuniary interest expanded to include a broader range of pecuniary interests. *Id.* at 612.

By adding "in trust, or in any other manner," the 1841 revision required transfer in a broader range of cases than did the 1821 statute. We nevertheless in *Marston* placed a limit on the interests for which intercounty transfer of the estate was necessary by narrowly construing the phrase "or in any other manner":

> By the [1841] amendment the substituted words: "in his own right," obviously included the direct personal interest previously described as that of "an heir, legatee, creditor or debtor," while "in trust" were evidently intended to cover any indirect, representative interest which the judge might have strictly as trustee, or as executor, administrator or guardian; *and to make sure of comprising every pecuniary relation of a judge to an estate within his county,* the legislature added in the same connection, *nosci a sociis,* "or in any other manner."

*Marston, Petitioner,* 79 Me. at 36, 8 A. at 89–90 (emphasis added). Our use of the phrase *noscitur a sociis,* Latin for the maxim of statutory construction "that a word is known by the company it keeps," *Gregory v. Ashcroft,* —— U.S. ——, ——, 111 S.Ct. 2395, 2403, 115 L.Ed.2d 410 (1991), explains how we interpreted the legislature's addition of the phrase "or in any other manner." The phrases immediately preceding the phrase "or in any other manner" specified that transfer was required when the judge had an interest directly related to the estate: either one of the interests that had been described with specificity in the 1821 statute or an interest in the estate held as a trustee. Thus, in holding in *Marston* that a probate judge was not required to transfer the settlement of an estate to another county even though

his aunt was interested therein, we implied that the phrase "or in any other manner" required at least a direct interest in the estate. *See Marston, Petitioner,* 79 Me. at 36–37, 8 A. at 89–90.

We see no reason to depart from that reasoning in our interpretation of section 307, which remains unchanged in substance since 1841. Inter-county transfer pursuant to section 307, with the attendant burdens it imposes on the parties involved in the probate of an estate in a county removed from the decedent's residence, is a drastic remedy. Judge Faber had no interest as an heir, legatee, creditor, or debtor of the estate being probated in the Knox County Probate Court. Nor did he have a representative interest in the estate as a trustee, executor, administrator, or guardian. Without an interest that goes directly to the estate, transfer out of the county is not required.

We are mindful that despite the limits of section 307, modern ethical standards of judicial conduct recognize a wide range of interests that will mandate judicial recusal in a particular case. Occasions for recusal arise particularly often for part-time probate judges whose principal vocation is the practice of law. Judge Faber recognized his duty under the Code of Judicial Conduct to disqualify himself in the Roach will contest proceedings. *See* Maine Code of Jud. Conduct Canon 3(C)(1) ("A judge should disqualify himself in any proceeding in which he has reason to believe that he could not act with complete impartiality, or in a proceeding in which his impartiality might reasonably be questioned"). The dictates of the Code of Judicial Conduct, however, cannot be superimposed upon section 307 that dates from 1841.[4]

---

4. In enacting the antecedents of section 307, the legislature was likely concerned with providing for the expeditious resolution of probate matters. At least since Coke's pronouncement in *Dr. Bonham's Case,* 8 Co. 107a, 77 Eng.Rep. 638 (1609), that a person cannot be both a judge and a party in a single case, another party could attack as error on appeal a decision in a matter in which the judge had a pecuniary interest. *See Conant's Appeal,* 102 Me. 477, 481, 67 A. 564, 566 (1907). In nonprobate cases, when a party challenged a judge's ability to rule on the matter, the judge usually continued the matter until another judge was available. *See, e.g., Moses v. Julian,* 45 N.H. 52, 53 (1863) (surveying state law cases). Because probate estates required ongoing judicial attention, such a system would have delayed the final disposition of an estate. Hence, transfer provided automatically for a new forum for the settlement of a probate estate started in a county with an interested judge. The legislation had an additional effect. Once the legislature mandated by statute that settlement be moved to another county, out of respect for the role of the legislature in defining

438

## II.

### Sufficiency of the Evidence

We find no merit to Moss's argument that the court's decision to admit the 1970 will to probate was against the weight of the evidence. The burden placed on a party to prove a lost will is a high one:

> The existence of a lost will must be proved by evidence clear, strong, satisfactory and convincing. The evidence must be strong, positive and free from doubt. If the instrument, propounded as a revocation of a will, be in the form of a will, it must be perfect as such and subscribed and attested as required by statute.

*Lord's Appeal,* 106 Me. 51, 56, 75 A. 286, 288 (1909) (citations omitted). The court twice made findings, in its May 24, 1990, judgment and in its December 18, 1990, order on Moss's post-trial motions, that Moss had failed to meet his burden of proving the existence of a 1981 will leaving Mrs. Roach's estate to him. Our review of the evidence does not compel us to reach a different result. *See Estate of Dodge,* 576 A.2d 755, 756 (Me.1990).[5]

## III.

### Costs

■■■ We also reject Moss's argument that the probate court committed error by denying him costs, including attorney fees, out of the estate. The decision whether to award costs to a party in a will contest pursuant to M.R.Prob.P. 54(d)(1) and 18–A M.R.S.A. § 1–601 (1981) is a matter left to the sound discretion of the probate judge. Moss has shown no abuse of discretion here. Along the same lines, we also reject the Town's argument raised on cross-appeal that the probate court committed error

by denying its request for costs, including attorney fees, to be paid by Moss. "An award of costs against a losing party is permissible only upon an express finding that the claim or objection is frivolous or malicious." *Estate of Rosen,* 520 A.2d 700, 701 (Me.1987). We decline to disturb Judge Berry's decision that Moss's challenge to the probate of the 1970 will, although unavailing, was neither frivolous nor malicious.

The entry is:

Judgment affirmed.

All concurring.

---

the boundaries of the business of the courts, we found judgments rendered in violation thereof void as *coram non judice. See Marston, Petitioner,* 79 Me. 25, 33–34, 37–38, 8 A. 87, 90 (1887). Conversely, in recognition of the legislature's having created "a full, complete and independent code intended to reach every case that could arise," *id.* at 34, 8 A. at 88, we refused to allow *probate* judges "interested otherwise *than is* provided by [the] statutes ... to decline to act and take the case up by appeal." *See id.* at 38, 8 A. at 90. Instead, judges should in such

cases, we suggested, rely upon the antecedents to section 306. *See id.* at 37, 8 A. at 90.

5. Moss argues, in the alternative, that the court should have probated the 1981 will that changed the name of the alternate executor rather than the 1970 will. The evidence that this will existed was equally insufficient to meet the evidentiary standard imposed by *Lord's Appeal,* 106 Me. 51, 56, 75 A. 286, 288 (1909).